Committee Against MRT et al., Appellants, *v.* Public
Utilities Commission of Ohio et al., Appellees.

(No. 77-382—Decided December 28, 1977.)

232

*Messrs. Muldoon, Pemberton, & Ferris* and *Mr. David L. Pemberton,* for appellants.

*Mr. William J. Brown,* attorney general, *Mr. Marvin I. Resnik* and *Ms. Cheryl K. Hachman,* for appellee.

*Messrs. Frost & Jacobs, Mr. Charles G. Puchta, Mr. Earl R. Huffman* and *Mr. Jeffery R. Rush,* for intervening appellee.

SWEENEY, J. The only issue to be resolved in this appeal is whether appellants' were provided proper notice of the proceedings initiated by Cincinnati Bell before the commission.

R. C. 4909.18 provides that, unless otherwise ordered by the commission, the public utility must file, along with its application to the commission, "[a] proposed notice for newspaper publication fully disclosing the substance of the application." And, irrespective of whether the utility is required to file such notice with the commission, R. C. 4909.19 provides that the utility must publish once a week for three consecutive weeks in newspapers of general circulation throughout the affected areas "the substance and prayer" of its application. The purpose of this requirement, as evidenced in R. C. 4909.18(E), is to provide any person, firm, corporation, or association, an opportunity to file an objection to the increase under R. C. 4909.19.

It is contended in the instant cause that because persons in the affected areas were generally put on notice of the proposed rate increases, it was immaterial that they were not specifically notified that such increase would be effected by introducing usage rates. We disagree.

While generally the published notice required under R. C. 4909.19 need not contain every specific detail affecting rates contained in the application (indeed, such a requirement would be highly impractical and unnecessarily expensive), the court notes that the statute does require that the "substance" of the application be disclosed; *i. e.,* that the essential nature or quality of the proposal be disclosed to those affected by the rate increases. Although there is no specific test or formula this court can apply in reviewing challenges made by subscribers with respect to the sufficiency of the notice provided by a utility, it is clear, given the purposes of the publication requirement under R. C. 4909.19, that a highly innovative and material change in the method of charging customers should be included in the notice.

In the instant cause, Cincinnati Bell provided in its

notice to subscribers that it had applied to the commission for authority to increase its rates and charges and revise its tariffs, all of which would be applicable throughout the company's territory in Ohio. The utility stated further in its notice that more information could be obtained from exhibits on file with the commission. Although the utility fully explained measured rate service in Exhibit D of its application, there was no mention of this important proposal in its notice furnished subscribers.

From reading the notice published in their local newspapers, subscribers opposed to usage rates would not have known of the innovative plan being introduced by the utility, would not have had any reason to view the exhibits on file with the commission, nor would they have had any interest in participating in the hearings held before the commission. Thus, because of the insufficient notice, appellants were not only denied an opportunity to present evidence at the hearings before the commission opposing the selection of the experimental area for measured rate service, but also were denied the opportunity to challenge the new rate service itself.

We therefore conclude that Cincinnati Bell, in order to insure an opportunity for its subscribers to be heard, was required under R. C. 4909.19 to specifically mention its proposed measured rate service in its published notice regarding rate increases.

The question remains how the failure on the part of the utility to provide proper notice of its proposed measured rate service plan should be corrected. Because appellants are presently fully informed as to the contents of the application, further publication with respect to this group would serve no useful purpose. However, correction of the deficiency does require that appellants be allowed a hearing not only on the narrow issue of whether the Hartwell switching area should be chosen for the experiment, but also on the general issue of whether measured rate service should be introduced into any area serviced by the utility.

Therefore, that part of the commission's order which limited the hearing granted appellants is reversed, and the cause is remanded for further proceedings consistent with this opinion.

*Order reversed in part.*

CELEBREZZE, W. BROWN and LOCHER, JJ., concur. O'NEILL, C. J., HERBERT and P. BROWN, JJ., dissent.

PAUL W. BROWN, J., dissenting. The application filed with the Public Utilities Commission (the commission) on November 17, 1975, by Cincinnati Bell pursuant to R. C. 4909.18 announced the company's intention to institute a new rate structuring plan called "measured rate service" and designed to relate the customer's monthly charge to the customer's usage throughout its service area. The application sought authority to institute measured rate service on a one to two year trial basis in one or two of its central office areas beginning within 12 to 24 months of the effective date of the revised tariff, so as to determine feasibility and customer requirements and to verify that the proposed newly structured measured rates would in fact produce no change in the company's earnings.

The application proposed to implement the changeover by progressively converting central office areas to the new method over a five-year period subsequent to completion of the trial or test period.

R. C. 4909.19 requires the publication of the "substance and prayer of such [an] application" to be made *"in a form approved by the Public Utilities Commission"* in a newspaper published and in general circulation in the territory in which the utility operates. (Emphasis added.)

That statute also requires the commission to cause an investigation to be made of the facts set forth in the application and its exhibits and matters connected therewith, to cause a written report of that investigation to be filed with the commission, and to cause a copy of the report to be

"sent by registered mail to the applicant, the mayor of any municipal corporation affected by the application, and to such other persons as the commission deems interested."

The statute further requires that after such notices are sent, applicants, objectors and interested parties are to be notified and a hearing is to be held.

The notice which was approved by the commission and published stated, in part: "Public notice is hereby given that Cincinnati Bell, Inc. (the 'Company') has filed with the Public Utilities Commission of Ohio an Application for authority *to adjust its rates and charges and to change its tariffs. * * * The proposed increases and adjustments are applicable throughout the territory in Ohio in which the Company operates.*" (Emphasis added.) The notice referred interested parties to the detailed application and exhibits on file with the commission at 180 East Broad Street, Columbus, Ohio.

A copy of the staff report resulting from the investigation referred to in the statute was served on all the mayors and prosecuting attorneys in the territory served by Cincinnati Bell and on other interested persons designated by the commission. The details of the application referred to in the commission's staff report included the fact that the measured rate service experiment was to take place initially in one or more of the central office areas and that its later extension throughout Cincinnati Bell's entire service area was intended to be at the option of that company.

The first public hearing was held February 17, 1977, at which time all interested persons were heard. Discussions and negotiations followed, and a stipulation signed, on February 23, 1977, by Cincinnati Bell, the commission staff and all the parties that had intervened in the proceeding by that date, including the cities of Cincinnati, Hamilton and Norwood; Answering Exchange, Inc.; The Ohio Council of Retail Merchants; The Ohio Committee of the Central Station Electrical Protection Association; and Ohio Private Employment Service Association was filed with the commission on the next day.

The stipulation set forth in detail the parties' agreement concerning a trial of measured rate service. In summary, they agreed, *inter alia,* that (1) the measured rate service trial would not be instituted for at least 12 months from the date of the commission's order and would continue for two years; (2) the trial rates for measured rate service could be adjusted not more than two times during the test period to achieve a zero net effect on Cincinnati Bell's earnings; (3) during the trial period, Cincinnati Bell would collect and make available to the commission and the parties such data as might be collected by it; (4) after 18 months or at the end of the two-year trial period, Cincinnati Bell would either withdraw the offering or apply to the commission for authority to extend measured rate service to the balance of the company's service area; and (5) none of the parties to the stipulation was deemed to have waived any right to object to the extension of measuured rate service.

Thereafter the commission's opinion and order of March 9, 1977, was issued which authorized the experiment instituting rate schedules and *expressly reserved the question of whether it would ultimately approve or disapprove expansion or withdrawal of the experimental plan.*

This order which authorized the proposed experiment specifically subjected it to the limitations provided for in the stipulation and recommendation and found that agreement reasonable.

That agreement, containing a designation of the Hartwell central office as the only area in which the experiment was to take place, was filed with the commission on February 24, 1977; it was made the detailed basis of much of the commission's March 9 order on which commissioner Sweet wrote the following handwritten comment:

"I am concerned with the interests of the customers of the Hartwell Exchange—designated as the exchange in which a measured service demonstration is undertaken. I hope the company will do a much better job in informing these customers of the potential benefit of measured service. D. Sweet."

238

None of the objectors or intervenors appealed from this order. However, the appellants, nine subscribers served by the Hartwell central office, formed the so-called Committee Against MRT, claiming that they first heard on February 28, 1977, five days after the date of the stipulation, of the mandatory nature of the utility's measured rate service and that their service area had been selected for the implementation thereof; that they opposed the stipulation; and that they sought to have Cincinnati City Council withdraw its approval thereof on March 9, the date of the commission's order approving the stipulation and authorizing the test in the Hartwell area.

On March 17, 1977, appellants filed a petition with the commission for leave to intervene, for rehearing and for a stay order, claiming that the notice given by Cincinnati Bell so inadequately described the substance of the application that it violated R. C. 4909.19 and invalidated the proceedings.

On March 23, 1977, the commission denied a rehearing, but ordered a further hearing limited to the "narrow issue of which of * * * [the Cincinnati Bell's] central offices should be selected for the institution of the experimental measured rate service."

Appellants then appealed to this court, sought and obtained a stay of execution which is still pending, and broadly attacked both the March 9, 1977, and the March 23, 1977, orders of the commission.

The majority opinion concludes that the notice was inadequate in that it was indefinite in advising the "subscribers," and that this lack of notice not only deprived the subscribers of the opportunity of presenting evidence opposing selection of the experimental area for the measured rate service but also denied the opportunity "to challenge the new rate service itself." The majority reasons that since further publication would serve no useful purpose only an order allowing these appellants a hearing "also on the general issue of whether measured rate service should be introduced into any area serviced by the utility is required."

I dissent, concluding that the notice given clearly complied with the applicable statute, that the appellants were not entitled to a rehearing of the matters disposed of in the commission's order of March 9, 1977, and that, in all events, appellants' complaints concerning that order require no reversal of that order. One complaint was satisfied by the commission's order of March 23, 1977, which granted a further hearing with regard to the "issue of which of * * * [the Cincinnati Bell's] central offices should be selected for the institution of the experimental measured rate service," and the sole other complaint was premature in that the order of March 9, 1977, specifically reserved ultimate approval of expansion of the experimental plan in the service area or withdrawal of the plan in its entirety.

The right of a ratepayer to participate in the rate making procedures is a statutory, not a constitutional, right. See *Public Utility Commission of California* v. *United States* (C. A. 9, 1966), 356 F. 2d 236; *Sellers* v. *Iowa Power & Light Co.* (S. D. Iowa, 1974), 372 F. Supp. 1169; *Georgia Power Co.* v. *Allied Chemical Corp.* (1975), 233 Ga. 558, 212 S. E. 2d 628; *Rivera* v. *Chapel* (C. A. 1, 1974), 493 F. 2d 1302; *Franchise Tax Board* v. *Superior Court* (1951), 36 Cal. 2d 538, 225 P. 2d 905.

In R. C. 4909.19, the General Assembly (whose agent is the Public Utilities Commission) provided for notice, and made that body the final arbiter of the form of that notice. As a result, the approval by the commission of the notice here given, with its reference to the application and exhibits thereto on file with the commission and which was published as required, constitutes compliance with that statute.

The statutory requirement that the staff report be circulated provides further assurance that good faith notice of all details of the plan reached those who on behalf of their cities and other individual consumers will object as interested parties and thus trigger a full hearing in all but the rarest cases. Such occurred here and resulted not only in stipulated limitation of the scheme as planned

but also in the allowance of further limited hearings and addition of these appellants as parties in those and all future hearings in the course of which reserved matters are to be considered. In view of this occurrence, the order of the majority reopening the matter in all of its original aspects is not only vain, but disregards R. C. 4903.10 authorizing the denial of leave to apply for rehearing to those who are, as here, found (by the commission) to have failed without just cause to have entered their appearance in the matter prior to the entry and whose interests were adequately considered, another finding of the March 23, 1977, order not before us on this appeal.

Additionally, the majority opinion loses sight of the fact that R. C. 4905.31 authorizes a utility to file schedules of rates for a classification of service based upon quantity, purpose, time and duration of use, and that this court has found such usage rates essentially more fair and less discriminating than flat rates. Commissioner Sweet's comment in excepting to part of the order appealed from is witness to the need for testing in the public interest. The fact that the Hartwell Exchange may for valid reasons be eventually chosen for the initial experiment may be to the benefit of its subscribers generally, depending upon how unfair the present flat rates are revealed to be to those subscribers when the results of the experiments are obtained and published.

I consider that both orders are entirely lawful and reasonable, and would affirm.

O'NEILL, C. J., and HERBERT, J., concur in the foregoing dissenting opinion.