OHIO ASSOCIATION OF REALTORS, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

(No. 79-51—Decided December 26, 1979.)

*Messrs. Muldoon, Pemberton & Ferris* and *Mr. David L. Pemberton,* for appellant.

174

*Mr. William J. Brown,* attorney general, and *Mr. Marvin I. Resnik,* for appellee.

*Mr. Donald W. Morrison* and *Mr. Charles B. Ballou,* for intervening appellee.

*Per Curiam.* The pertinent statute involved in this cause is R. C. 4909.19 which, in part, reads as follows:

"Upon the filing of any application for increase provided for by section 4909.18 of the Revised Code the public utility shall forthwith publish the substance and prayer of such application, in a form approved by the public utilities commission, once a week for three consecutive weeks in a newspaper published and in general circulation throughout the territory in which such public utility operates and affected by the matters referred to in said application, and the commission shall at once cause an investigation to be made of the facts set forth in said application and the exhibits attached thereto, and of the matters connected therewith.***"

This court, in construing R. C. 4909.19, concluded in *Committee Against MRT* v. *Pub. Util. Comm.* (1977), 52 Ohio St. 2d 231, that it was mandatory to set forth the fact of the measured rate service proposal within the official publication. The court stated, at pages 233-234, as follows:

"In the instant cause, Cincinnati Bell provided in its notice to subscribers that it had applied to the commission for authority to increase its rates and charges and revise its tariffs, all of which would be applicable throughout the company's territory in Ohio. The utility stated further in its notice that more information could be obtained from exhibits on file with the commission. Although the utility fully explained measured rate service in Exhibit D of its application, there was no mention of this important proposal in its notice furnished subscribers.

"From reading the notice published in their local newspapers, subscribers opposed to usage rates would not have known of the innovative plan being introduced by the utility, would not have had any reason to view the exhibits on file with the commission, nor would they have had any interest in participating in the hearings held before the commission. Thus, because of the insufficient notice, appellants were not only denied an opportunity to present evidence at

the hearings before the commission opposing the selection of the experimental area for measured rate service, but also were denied the opportunity to challenge the new rate service itself.

"We therefore conclude that Cincinnati Bell, in order to insure an opportunity for its subscribers to be heard, was required under R. C. 4909.19 to specifically mention its proposed measured rate service in its published notice regarding rate increases."

The court in the syllabus of *MRT*, *supra*, mandated that:

"Where a utility plans to adopt measured rate service as the method for establishing rates to be charged its subscribers and includes such plan as a proposal in its general application for a rate increase before the commission, it must specifically mention the proposal in any notice published under the requirements of R. C. 4909.19."

It is our determination that the facts presented within this case are not materially different from the facts in *MRT* and come within the mandate of the syllabus of that opinion. A portion of Ohio Bell's general application for a rate increase was to change its business customers to a measured rate service. The published legal notice contained no references to such service. We thus hold that according to *MRT* the notice in the instant cause did not disclose the essential nature or quality of the proposal to those affected by the rate increase.

Ohio Bell argues that any insufficiency in the published legal notice was cured by the mailing of information of the proposed measured rate service increase. Such information was contained within separate brochures which were enclosed within mailings of bills to Ohio Bell customers. Upon inspection of the brochures, it would seem to this court that the explanation of the new method of rates using the measured number of calls would be a reasonable explanation of the system had such information been included within the original official publication. However, this material submitted along with the regular customer billings cannot stand in the stead of the requirement of a reasonable statement of such rate amendment proposal to be placed in the legal notice.

The notice requirement of the statute as discussed by this court in *MRT, supra,* is not an unreasonable one. It requires only that the notice state the reasonable substance of the proposal so that consumers can determine whether to inquire further as to the proposal or intervene in the rate case.

This court having held that the legal notice required by R. C. 4909.19 had not been given, the order of the Public Utilities Commission dated December 6, 1978, being unreasonable and unlawful, is hereby reversed, and this cause is hereby remanded to the commission for purposes of reissuing appropriate notices pursuant to R. C. 4909.19 and conducting further hearings upon the prior application as filed within Case No. 74-761-TP-AIR.

Further, the additional hearings by the commission after appropriate notice is reissued are not to be hearings *de novo,* but may be considered a continuation of the prior hearings, and the further determination of the commission may be based upon the totality of the evidence adduced from both the prior record and the additional hearings.

*Order reversed and cause remanded.*

CELEBREZZE, C. J., W. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.

HERBERT and P. BROWN, JJ., dissent.

PAUL W. BROWN, J., dissenting. In the dissent in *Committee Against MRT* v. *Pub. Util. Comm.* (1977), 52 Ohio St. 2d 231, concurred in by our late Chief Justice C. W. O'Neill and by Justice Herbert, I stated as clearly as I could my reasons for believing that the notice required by R. C. 4909.19 is not and should not be subject to collateral attack.

The decision here is a consequence of what I consider to be the court's misjudgment in that case. The impact of *MRT* as pointed out by commission's counsel in its brief causes continued concern that this appeal is the tip of an iceberg of future appeals based on the current uncertainty as to adequacy of compliance with notice requirements of R. C. 4909.19 in all past cases.

This case represents a collateral attack on a commission order issued in 1976 which resulted from lengthy hearings

and which has been implemented by substantial investments over a period of three years.

As an additional consideration weighing strongly against the rationality of permitting such collateral attacks upon the commission's jurisdiction it must be noted that 26 cities and villages participated in the proceedings, in connection with which the question of measured rates was persistently argued by ten state universities, the Ohio Council of Retail Merchants and the Ohio Private Employment Association. The order here reversed as being beyond the jurisdiction of the commission survived three separate appeals to this court. See *Central State University* v. *Pub. Util. Comm.* (1977), 50 Ohio St. 2d 175; *Electrical Protection Assn.* v. *Pub. Util. Comm.* (1977), 50 Ohio St. 2d 169; and *Akron* v. *Pub. Util. Comm.* (1977), 51 Ohio St. 2d 27. One wonders what further demands may be required in order to assure finality.

In my view the subjective test which the court attempted to indict in *MRT* is incapable of specific definition and the concept of requiring detailed factual matters in the R. C. 4909.19 notice as a prerequisite of jurisdiction is destructive of the regulatory scheme.

HERBERT, J., concurs in the foregoing dissenting opinion.