AT&T COMMUNICATIONS OF OHIO, INC. ET AL., APPELLANTS, *v.* PUBLIC
UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as AT&T Communications of Ohio, Inc. *v.* Pub. Util. Comm. (1990),
51 Ohio St. 3d 150.]

(No. 89-903—Submitted March 28, 1990—Decided May 30, 1990.)

*Thomas R. Phillips, O. Carey Epps, Dennis S. Pines, Vorys, Sater, Seymour & Pease* and *William S. Newcomb, Jr.,* for appellant AT&T Communications of Ohio, Inc.

*Stephanie D. Pestello, Douglas W. Trabaris* and *Clifford O. Arnebeck, Jr.,* for appellant MCI Telecommunications Corp.

*Anthony J. Celebrezze, Jr.,* attorney general, *Robert S. Tongren, Ann E. Henkener* and *James B. Gainer,* for appellee.

*Joseph R. Stewart, Bruce Kazee* and *Anthony P. Gillman,* for intervening appellee GTE North, Inc.

*William A. Spratley,* consumers' counsel, *Evelyn R. Robinson-McGriff, Michael McCord, G. James Van Heyde* and *Colleen L. Mooney,* for intervening appellee Office of Consumers' Counsel.

*Per Curiam.* AT&T and MCI first argue that GTE did not place the CCLC in issue because GTE did not apply to increase it and, furthermore, that the CCLC is not related to the rates which are the subject of the application. According to appellants, the commission could not have raised in issue the CCLC. We hold that the CCLC is related to the rates which are the subject of the instant application and that the commission could raise it.

In *Cleveland Elec. Illum. Co.* v. *Pub. Util. Comm.* (1975), 42 Ohio St. 2d 403, 71 O.O. 2d 393, 330 N.E. 2d 1, paragraph six of the syllabus, we stated:

"When considering an application for a rate increase filed by a public utility, the Public Utilities Commission may not extend its inquiry into matters not put in issue by the applicant and not related to the rates which are the subject of the application."

In that case, CEI appealed from the commission's order that, *inter alia,* eliminated certain fuel costs from CEI's fuel adjustment clause. The commission had concluded that the scope of a general rate increase case included nearly all of CEI's rules and regulations which in any manner could be applied in charging new rates. CEI, on the other hand, argued that it had not placed this change in tariffs in issue in the application and that it should not have the burden to support it.

We agreed with the commission that R.C. 4909.19 permitted the commission to review an applicant's rules and regulations which could in any manner be applied to charging new rates. However, we disagreed that the commission could inquire into matters not put in issue by the applicant and not related to the rates that were the subject of the application. We remanded the case without delineating which issues fell "* * * within the realm of the Company's application or have an effect upon the rates." *Id.* at 420, 71 O.O. 2d at 403, 330 N.E. 2d at 13.

In *Cleveland* v. *Pub. Util. Comm.* (1980), 63 Ohio St. 2d 62, 66-67, 17 O.O. 3d 37, 40, 406 N.E. 2d 1370, 1375, we reviewed the *Cleveland Elec. Illum. Co.* holding. In *Cleveland* v. *Pub. Util. Comm.,* we approved the commission's inclusion of a flat customer charge in the utility's residential rate schedule. The charge, first proposed by the commission staff, was intended to recover basic costs, irrespective of customer usage. The city of Cleveland argued that the commission should not have devised such a charge since it was unrelated to the rates in question.

We regarded this contention as untenable. We said, at 67, 17 O.O. 3d at 40, 406 N.E. 2d at 1375, "* * * [t]he costs recovered by this charge are part of the costs of providing electric service. While this component was previously built into the rate per volume, here appellee merely decided to allow CEI to recover it by way of a flat charge."

Under these cases and R.C. 4909.15, which empowers the commission to determine just and reasonable rates and charges, the commission had authority to alter GTE's rate structure and to increase the CCLC. The revenue derived from the CCLC helps satisfy GTE's total revenue requirements, and these revenues pay GTE for supplying telephone service. Thus, the CCLC is related to the rates which are the subject of the instant application, and the commission could increase it.

Next, AT&T and MCI argue that GTE's public notice, required to be published under R.C. 4909.19, failed to mention the CCLC. They argue that we should reverse the commission's order. R.C. 4909.19 provides:

"Upon the filing of any application for increase provided for by section 4909.18 of the Revised Code the public utility shall forthwith publish the substance and prayer of such application, in a form approved by the public utilities commission, once a week for three consecutive weeks in a newspaper published and in general circulation throughout the territory in which such public utility operates and affected by the matters referred to in said application * * *."

In *Committee Against MRT* v. *Pub. Util. Comm.* (1977), 52 Ohio St. 2d 231, 6 O.O. 3d 475, 371 N.E. 2d 547, Cincinnati Bell filed an application requesting that it be allowed to adopt a new rate plan, measured rate service. It detailed the service in an exhibit accompanying the application but failed to mention the service in the published notices, except for a general reference to the exhibits. The commission allowed Cincinnati Bell to experiment with this service in a designated area.

Thereafter, the Committee Against MRT, representing residential and business subscribers in the designated area, petitioned to intervene, requesting a rate hearing and a stay of execution. The committee alleged that Cincinnati Bell had not given proper notice of this service and, consequently, had denied the committee an opportunity to be heard. The commission denied the petition but

ordered an additional hearing to be held to discuss in which area Cincinnati Bell should conduct the experiment.

On appeal, we reasoned that subscribers could not have known of the innovative plan by reading the published notice, would not have had any reason to examine the exhibits, and would not have had any interest in the hearings. We held that, because of the insufficient notice, the committee was denied an opportunity to both present evidence opposing the selection of the experimental area and to challenge the new service itself. We concluded that Cincinnati Bell, thus, should have specifically mentioned its proposed service in the published notice.

However, we did not disallow the service, and we did not require further published notice. Instead, we ordered the commission to conduct a hearing on whether the service should be introduced into any area and on whether the designated area should be chosen for the experiment.

In *Assn. of Realtors* v. *Pub. Util. Comm.* (1979), 60 Ohio St. 2d 172, 14 O.O. 3d 409, 398 N.E. 2d 784, we approved the reasoning of *Committee Against MRT*. We remedied the lack of notice in *Assn. of Realtors* by ordering the commission to reissue appropriate notices and to conduct further hearings on the original application. However, we cautioned that the hearings were not to be *de novo* but were to be a continuation of the prior hearings. Furthermore, we stated that the commission's order could be based upon the totality of the evidence adduced at both hearings.

In the instant case, GTE did not propose, in its application, to increase the CCLC; the CCLC increase, consequently, was not within the "substance and prayer" of the application. Thus, R.C. 4909.19 did not require GTE to mention this increase in the notice.

Nevertheless, the notice of application did state that intervening parties may make recommendations different from the proposals in the application and that the commission may even adopt different recommendations. This language did notify the public that the commission could adjust rates not mentioned in the application.

Moreover, AT&T and MCI had knowledge that the commission could increase the CCLC. They had filed, at an early stage, to intervene. They both cited the commission's March 12, 1987 order in *In Matter of Commission Investigation Relative to Establishment of Intrastate Access Charges*, No. 83-464-TP-COI (Subfile C) ("464 case"), in which the commission recognized its inability to establish company-specific, cost-based access charges via such 464 case. In that order, the commission announced that individual rate cases were the appropriate forums to adopt such rates. Furthermore, in the instant case, the commission gave AT&T and MCI an opportunity to present evidence, which they declined to do. This offered opportunity satisfies our holdings in *Committee Against MRT* and *Assn. of Realtors*.

AT&T and MCI also argue that the commission shifted from GTE to them the burden to prove who should bear the rate increase. According to the commission, however, GTE had and sustained the burden to show that increased revenues were just and reasonable. To provide these revenues the commission assigned the rate increase to most of GTE's existing services on a uniform percentage basis. In allowing AT&T and MCI, ratepayers in this case, to file additional evidence or arguments challenging this result, the commission imposed on them the same burden of production and persuasion that we had earlier placed on the

Committee Against MRT and the Ohio Association of Realtors. The commission did not place on appellants a burden to establish that a rate increase was in order or who should bear it.

Accordingly, the published notice was adequate, AT&T and MCI actually had notice that the commission could increase the CCLC, and the commission cured any potential defect in the proceedings by affording AT&T and MCI an opportunity to present evidence on revenue distribution.

Finally, AT&T and MCI argue that the record does not support the commission's decision to increase the CCLC and, thus, the decision is unreasonable and unlawful. We disagree and hold that AT&T and MCI have not established that the commission's rate-making decision was unreasonable, unlawful, or against the manifest weight of the evidence.

In *Cleveland Elec. Illum. Co.* v. *Pub. Util. Comm.* (1976), 46 Ohio St. 2d 105, 107-108, 75 O.O. 2d 172, 173-174, 346 N.E. 2d 778, 781, we described the rate-making process and our function. The commission is to follow the often difficult and complex statutory plan and fix lawful and reasonable rates based upon the evidence presented. Under R.C. 4903.13, we are to affirm the commission's order if it is reasonable and lawful:

"Our function is not to weigh the evidence or to choose between alternative, fairly debatable rate structures. That would be to interfere with the jurisdiction and competence of the commission and to assume powers which this court is not suited to exercise. '* * * The members of this court are neither accountants nor engineers, and manifestly it would be unfair to the litigants and to the commission for the court to pretend that it is in a position to better evaluate the evidence and determine the difficult question of the reasonableness of the order than is the commission.' *Dayton* v. *Pub. Util. Comm.* (1962), 174 Ohio St. 160, 162 [21 O.O. 2d 427], 187 N.E. 2d 150. Our task is not to set rates; it is only to assure that the rates are not unlawful or unreasonable, and that the rate-making process itself is lawfully carried out."

Moreover, when "* * * the Public Utilities Commission fixes the rates or charges which may be collected by a public utility in furnishing its services or products to the users or consumers thereof, a presumption exists that such rates or charges are fair and reasonable, and a party who contends otherwise has the burden on appeal to the Supreme Court under Section 4903.13, Revised Code, of showing that they are unjust, unreasonable or unlawful." *Columbus* v. *Pub. Util. Comm.* (1959), 170 Ohio St. 105, 10 O.O. 2d 4, 163 N.E. 2d 167, paragraph two of the syllabus.

In *General Motors Corp.* v. *Pub. Util. Comm.* (1976), 47 Ohio St. 2d 58, 1 O.O. 3d 35, 351 N.E. 2d 183, the commission had adopted a rate structure to encourage energy conservation. General Motors, affected because it would be paying a higher rate due to its large usage of electricity, challenged the commission's order.

We held that, under R.C. 4909.15, the commission has considerable discretion in setting rate schedules and may approve such schedules based on the evidence before it in the exercise of its sound discretion. In affirming the order, we noted the conflicting testimony. We reasoned that allocating fixed costs of a utility to particular customers was an impossible task. Ultimately, we noted, any attempt to recover costs from customers required judgment based upon what is a just and reasonable rate. We affirmed the

commission's order because such determination is within its ability and province. We further rejected General Motors' contention that certain types of evidence are required to support a modification of rate structures, citing *Globe Metallurgical* v. *Pub. Util. Comm.* (1974), 40 Ohio St. 2d 40, 69 O.O. 2d 289, 319 N.E. 2d 360.

In the instant case, GTE established its need for increased revenues. This presented the commission with the duty to increase GTE's revenues; however, it lacked sufficient data to affirmatively charge any specific ratepayer with the increase. And AT&T and MCI declined to supply any such data. Therefore, the commission chose to spread the increase over virtually all the existing service rates. It had done this before in another case.

Under the above cases and in these circumstances, we presume the validity of the commission's order to increase GTE's CCLC. AT&T and MCI have failed to sustain their burden to overcome this presumption of validity. They have failed to persuade us that they should not pay for some of GTE's increase in revenues. Thus, the commission acted lawfully and reasonably.

Accordingly, we affirm the commission's order.

*Order affirmed.*

SWEENEY, Acting C.J., COX, HOLMES, DOUGLAS and RESNICK, JJ., concur.

WRIGHT and H. BROWN, JJ., concur in judgment only.

EDWARD A. COX, J., of the Seventh Appellate District, sitting for MOYER, C.J.