**[This opinion has been published in *Ohio Official Reports* at 86 Ohio St.3d 144.]**

CITY OF PARMA ET AL., APPELLANTS, *v.* PUBLIC UTILITIES COMMISSION OF

OHIO, APPELLEE.

**[Cite as *Parma v. Pub. Util. Comm*., 1999-Ohio-141.]**

*Telephone companies—Creation of new telephone area code designations in northeastern Ohio—Complaint challenging telephone company's plan to achieve area code relief dismissed by Public Utilities Commission—Dismissal of complaint by commission reasonable and lawful, when.*

(No. 97-2222—Submitted March 31, 1999—Decided July 28, 1999.)

APPEAL from the Public Utilities Commission of Ohio, No. 97-650-TP-CSS.

———————————

{¶ 1} This appeal involves orders of the Public Utilities Commission of Ohio ("commission") in a proceeding brought by the city of Parma in which Orange Village and the city of Bedford Heights joined (collectively, "Parma") against Ameritech Ohio ("Ameritech"). Parma challenged Ameritech's plan to achieve area code relief by creating a new 440 area code to occupy a portion of the 216 area code territory in northeastern Ohio that remained after the earlier creation of a new 330 area code territory in the southeastern portion of the original 216 area code territory (the greater Akron-Canton and Youngstown areas).[1] Parma asserted that the Ameritech plan to split the remaining 216 area code territory was unjust and

---

1. Ameritech did not seek commission approval of the creation, or boundaries, of the proposed new 440 area code territory, separate and apart from the complaint case. Indeed, there is no legal requirement of commission approval under the laws of the state of Ohio. The Federal Communications Commission ("FCC") has exclusive jurisdiction over the United States portions of the North American Numbering Plan under Section 251(e)(1) of the Telecommunications Act of 1996. However, at the indirect urging by Parma through Representative Dennis Kucinich, Tenth Congressional District (Ohio), the FCC delegated its authority to the commission and requested the commission to review the proposed area code relief plan.

unreasonable in violation of R.C. 4905.26 and would result in undue or unreasonable prejudice or disadvantage in violation of R.C. 4905.35.

{¶ 2} After publishing notice and conducting hearings on Parma's complaint, the commission issued its August 14, 1997 opinion and order in case No. 97-650-TP-CSS, wherein it found no violation of R.C. 4905.26 or 4905.35 by Ameritech and dismissed the complaint. Parma timely filed an application for rehearing, which was denied by the commission.

{¶ 3} Parma appealed the commission's orders to this court and Ameritech intervened as an appellee.

{¶ 4} The cause is before this court upon an appeal as of right.

_____

*Henry W. Eckhart*, for appellants.

*Betty D. Montgomery*, Attorney General, *Duane W. Luckey, Steven T. Nourse* and *Johnlander C. Jackson-Forbes,* for appellee Public Utilities Commission of Ohio.

*Jon F. Kelly,* for intervening appellee Ameritech Ohio.

_____

***Per Curiam.***

{¶ 5} This appeal concerns telephone area code designations. Pursuant to Section 251(e)(1), Title 47, U.S.Code, the Federal Communications Commission ("FCC") is vested with jurisdiction over the North American Numbering Plan ("NANP"). The commission determined that Ameritech serves as the "Local Number or CO Code Administrator" under the NANP for the 216 and 330 area codes (among others), and that Ameritech's duties as CO Code Administrator include (1) the assignment of NXX codes (the three-digit telephone number prefixes that follow the three-digit area codes[2]) to telecommunication service

_____

2. Area codes are also known as "numbering plan areas" or NPAs.

providers, (2) the prediction of area code "exhaust," and (3) the development of plans for area code relief.

**{¶ 6}** The case below involved a challenge to the second phase of a telecommunication industry plan to provide area code relief to northeastern Ohio. The first of two phases, approved in 1995, resulted in the splitting of the original 216 area code territory and establishing a new 330 area code in its southeastern portions (the greater Akron-Canton and Youngstown areas). The first phase was implemented promptly after the plan was approved. The second phase involved the splitting of the portion of the 216 area code territory remaining after the first split and designating a portion of that territory by yet another new area code number— the 440 area code territory.

**{¶ 7}** Implementation of the second phase of the plan was deferred, pending the approach of a condition in the remaining 216 area code territory known as area code "exhaust." "Exhaust" occurs when no more three-digit NXX prefixes remain in an area code for assignment to a telephone service provider (carrier).

**{¶ 8}** Acting in its capacity as CO Administrator, Ameritech projected that, absent any additional relief, the 216 area code remaining after the first split would exhaust as early as the second quarter of 1998. Whereupon, Ameritech set about to develop a plan for implementation of the second phase of 216 area code relief, with input from telecommunication industry representatives, community leaders, governmental representatives, the staff of the commission, and the Ohio Consumers' Counsel.

**{¶ 9}** The resultant second-phase plan left the city of Cleveland and close-by Cleveland suburbs or parts of suburbs in the 216 area code territory, with the farther-out areas being assigned a new 440 area code. As a result, Parma and twelve other communities were split into a 216 area code and a 440 area code.

**{¶ 10}** On April 4, 1996, Ameritech held a press conference announcing the boundaries of a 216/440 area code territorial split. The plan called for an optional

or permissive dialing phase to begin August 16, 1997, and mandatory dialing to begin April 4, 1998.

{¶ 11} On June 18, 1997, the city of Parma filed with the commission a complaint against Ameritech as CO Administrator, asserting that the second phase of the 216 area code relief plan that split the city of Parma into two area codes was unjust and unreasonable in violation of R.C. 4905.26 and would result in undue or unreasonable prejudice or disadvantage in violation of R.C. 4905.35. Dates, times, and places for hearings on the complaint were established; notices of the hearings were published in The Plain Dealer, a newspaper of general circulation in Cuyahoga County; and evidentiary hearings were held in Cleveland on July 21, 1997, and in Columbus on July 23, 1997. Following the hearings, the commission ruled against Parma and dismissed Parma's complaint against Ameritech. Parma has duly perfected its appeal to this court of the commission's dismissal of Parma's complaint.

*Adequacy of Notice*

{¶ 12} Parma contends that the commission unlawfully and unreasonably failed to comply with the controlling notice provisions of R.C. 4905.26, thereby compelling this court's reversal of the commission's orders.

{¶ 13} R.C. 4905.26 is divided into two branches, which have different notice requirements. From the record of the commission proceedings on appeal, it is clear that Parma's complaint was brought under the first branch of R.C. 4905.26. The first branch consists of the first two paragraphs of the statute and relates to a complaint "against *any public utility*, by any person, firm, or corporation * * *." (Emphasis added.) This branch, as it was worded at the time of this case,[3] provided

---

3. Shortly after the commission concluded the proceeding, the General Assembly amended R.C. 4905.26. Amended R.C. 4905.26 took effect a mere five days after the commission journalized its September 24, 1997 entry on rehearing in the complaint case. The amendment of the first branch of R.C. 4905.26 eliminated any requirement whatsoever of publication of notice.

that, if the commission finds that reasonable grounds for the complaint are stated, it shall set a time for hearing and shall notify the complainant and the public utility thereof. It also provided for publication of notice of the hearing and a statement of the matters complained of. This branch of the statute required that the notice be published in a newspaper of general circulation in each county in which the complaint had arisen and that publication be made not less than fifteen nor more than thirty days before the hearing.

{¶ 14} The commission in its July 11, 1997 attorney examiner's entry set the date, time, and place for the hearing, set forth the form of the notice to be published (in which the matters complained of were described), and ordered that:

"The Secretary of the Commission should cause publication of the following legal notice to appear for two consecutive weeks in a newspaper published, and of general circulation, within Cuyahoga County, Ohio. Publication should be made in a section other than the legal notice section of the newspaper."

{¶ 15} The notice, in fact, was published in The Plain Dealer and met all of the statutory notice requirements contained in R.C. 4905.26, save one.

{¶ 16} The one statutory requirement not met was that publication occur not less than fifteen nor more than thirty days prior to the date of the hearing. The notice was published on July 17 and 18, 1997. Since the hearing was scheduled for July 21, 1997, publication occurred less than fifteen days prior to the hearing date, being at most four days prior to the hearing. Moreover, publication occurred on two consecutive days, rather than on two consecutive weeks, as ordered by the commission. However, there was no statutory requirement in the first branch of R.C. 4905.26 for more than a one-time publication.

{¶ 17} Parma argues that it has been deprived of due process and that we should reverse the commission, because the publication of notice of the hearing did not strictly comport with the requirements of R.C. 4905.26. In support of that

argument, Parma cites four decisions in which we reversed the commission for defective or deficient notice of proceedings before it.

{¶ 18} The first two cases involved notices in rate proceedings brought under R.C. 4909.18 and 4909.19: *Commt. Against MRT v. Pub. Util. Comm.* (1977), 52 Ohio St.2d 231, 6 O.O.3d 475, 371 N.E.2d 547, and *Assn. of Realtors v. Pub. Util. Comm.* (1979), 60 Ohio St.2d 172, 14 O.O.3d 409, 398 N.E.2d 784. Neither case involved the notice period. Both cases involved determinations by the court that the published notices failed to adequately describe new services or conditions on the provision of services that were included in the proposed tariffs submitted for commission approval in the respective rate cases.

{¶ 19} Nor did the other two cases cited by Parma involve the notice period. *Allnet Communications Serv., Inc. v. Pub. Util. Comm.* (1987), 32 Ohio St.3d 115, 512 N.E.2d 350, involved a reversal of a commission dismissal of a complaint filed under R.C. 4905.26 without notice and a hearing required by the statute after a commission finding of "reasonable grounds" for the complaint. *Ohio Bell Tel. Co. v. Pub. Util. Comm.* (1992), 64 Ohio St.3d 145, 593 N.E.2d 286, involved reversal of a commission order in a complaint case brought under R.C. 4905.26 in which no hearing was held, contrary to the provisions of the statute.

{¶ 20} In short, we do not consider any of these four cases controlling with respect to this appeal because none of them dealt with the statutory notice period.

{¶ 21} In this case, the published notice provided a sufficient description of the substance of the complaint and notice was given and a hearing was held. The attorney examiner's entry dated July 11, 1997, which was served on the parties, provided notice of the commission hearing. Also, notice of the hearing was published in The Plain Dealer twice preceding the hearing, although the hearing was held less than fifteen days after publication. Moreover, Parma fully and fairly participated in the hearings on the complaint. The city of Parma's witness list indicates that ten days before the commencement of hearings, the city of Parma, by

its attorney, participated in a July 10, 1997 prehearing conference in the complaint case. And that same witness list, filed with the commission on July 17, 1997, indicates actual knowledge on the part of the city of Parma of the Cleveland hearing scheduled for July 21, 1997, and the Columbus hearing scheduled for July 23, 1997.

{¶ 22} No party made any objection to the scheduling of the hearings or to the publication of notice prior to the filing of the application for rehearing after the conclusion of hearings and the commission's issuance of its opinion and order on August 14, 1997. By failing to raise an objection until the filing of an application for rehearing, Parma deprived the commission of an opportunity to redress any injury or prejudice that may have occurred. Wherefore, we do not accept Parma's objections to the scheduling or publication of notice of the hearings.

{¶ 23} Indeed, as to the scheduling of the hearings, in the prayer of the complaint filed June 18, 1997, the city of Parma requested that the commission " * * * set a full evidentiary hearing * * * on the issues raised in this complaint *at the earliest possibility* [*sic*] *opportunity*." (Emphasis added.)

{¶ 24} In *Worthington Hills Civic Assn. v. Pub. Util. Comm.* (1976), 45 Ohio St.2d 11, 74 O.O.2d 40, 340 N.E.2d 411, we were faced with a number of claimed errors, including a challenge to the form of the notice of a water-rate-increase application. We noted that the challenger there assigned error to various actions and rulings of the commission, but failed to show "concomitant harm or prejudice." *Id*. at 12, 74 O.O.2d at 41, 340 N.E.2d at 412. In affirming the commission's order, we said that we will not reverse an order of the commission because of an error, if such error did not prejudice the party seeking reversal, and we cited *Cincinnati v. Pub. Util. Comm.* (1949), 151 Ohio St. 353, 39 O.O. 188, 86 N.E.2d 10, and *Ohio Edison Co. v. Pub. Util. Comm.* (1962), 173 Ohio St. 478, 20 O.O.2d 108, 184 N.E.2d 70. *Id*. at 13, 74 O.O.2d at 41, 340 N.E.2d at 412.

{¶ 25} The case of *MCI Telecommunications Corp. v. Pub. Util. Comm.* (1988), 38 Ohio St.3d 266, 527 N.E.2d 777, is similar to this appeal in that it

involved a challenge to the adequacy of notice in a commission proceeding. In that case we observed that the challenger, MCI, had in fact participated in the public hearing. We said:

"If MCI had objections to the actions that were about to be implemented, it should have made its objections within that time frame and preferably in that forum. Nothing in the record indicates that MCI was denied its right to be heard at these hearings * * *." *Id.*, 38 Ohio St.3d at 269, 527 N.E.2d at 780.

{¶ 26} We have previously held that this court will not reverse the commission for error when there has been substantial compliance with statutory notice requirements and the complaining party has not shown that it was prejudiced by the lack of strict compliance. *Ohio Bus Line, Inc. v. Pub. Util. Comm.* (1972), 29 Ohio St.2d 222, 58 O.O.2d 428, 280 N.E.2d 907, and *Valley Greyhound Lines, Inc. v. Pub. Util. Comm.* (1947), 148 Ohio St. 603, 36 O.O. 236, 76 N.E.2d 608.

{¶ 27} Moreover, R.C. 4905.09 reads:

"A *substantial* compliance by the public utilities commission with the requirements of Chapte[r] * * * 4905 * * * of the Revised Code is sufficient to give effect to all its rules, orders, acts, and regulations. Such rules, orders, acts, and regulations shall not be declared inoperative, illegal, or void for an omission of a technical nature in respect to such requirements. * * * " (Emphasis added.)

{¶ 28} Based on the foregoing, we reject Parma's argument that it has been denied due process by virtue of the commission's less than strict compliance with the notice publication requirements of R.C. 4905.26.

*Alternatives to the Planned Area Code Split*

{¶ 29} Parma argues that there are potential alternatives to Ameritech's proposed split of the 216 area code territory that could delay or possibly eliminate the need for the split.

{¶ 30} The commission considered the options presented by Parma's expert witness and expressed the belief that they were deserving of further consideration.

However, the commission concluded that, because of the exigencies of the fast-approaching, already-scheduled conversion of 216 NPA telephone number prefixes to 440 NPA prefixes, it was not feasible to implement any of the proposed alternatives in the case before it.

{¶ 31} Moreover, the mere showing of the existence of alternatives to immediate splitting of an area code territory does not constitute a showing that splitting an area code territory is unjust, unreasonable, unjustly discriminatory, or otherwise in violation of R.C. 4905.26 or 4905.35.

{¶ 32} In addition, we do not accept Parma's argument that the commission erred by not enforcing strict compliance with the NPA Code Relief Planning and Notification Guidelines (1997) ("Guidelines").[4]  In the first place, the Guidelines are merely what they are entitled—"guidelines"—and there is no requirement that an area code relief plan strictly conform to the Guidelines.

{¶ 33} Nevertheless, the requirements of the Guidelines were neither forgotten nor ignored; the Guidelines and their applicability were thoroughly reviewed by the commission.  The commission received extensive testimony on the applicability of the Guidelines, and the parties briefed the issues raised.  Parma simply disagreed with Ameritech and with the commission on the meaning of the Guidelines and their applicability.  We find that even though Ameritech's area code relief plan did not strictly comport with the Guidelines, the commission's approval of that plan did not constitute reversible error by the commission.

*Standard of Review by the Ohio Supreme Court*

{¶ 34} Appeals of commission decisions are subject to the standard of review contained in R.C. 4903.13, which provides in part:

---

4.  The Guidelines were adopted by an Industry Numbering Committee with the purpose of providing guidelines for NPA code relief planning activities.

"A final order made by the public utilities commission shall be reversed, vacated, or modified by the supreme court on appeal, if, upon consideration of the record, the court is of the opinion that such order was unlawful or unreasonable."

{¶ 35} This court has consistently interpreted the statutory standard of review as follows:

"In *MCI Telecommunications Corp. v. Pub. Util. Comm.* (1988), 38 Ohio St.3d 266, 268, 527 N.E.2d 777, 780, we repeated our interpretations of this standard, stating:

" 'Under the "unlawful or unreasonable" standard specified in R.C. 4903.13, this court will not reverse or modify a PUCO decision as to questions of fact where the record contains sufficient probative evidence to show the PUCO's determination is not manifestly against the weight of the evidence and is not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. *Dayton Power & Light Co. v. Pub. Util. Comm.* (1983), 4 Ohio St.3d 91, 4 OBR 341, 447 N.E.2d 733; *Columbus v. Pub. Util. Comm.* (1979), 58 Ohio St.2d 103, 12 O.O.3d 112, 388 N.E.2d 1237.' " *Ohio Edison Co. v. Pub. Util. Comm.* (1992), 63 Ohio St.3d 555, 556, 589 N.E.2d 1292, 1294.

{¶ 36} Our review of the record indicates that sufficient probative evidence was adduced before the commission to show that its determinations were just and reasonable and not manifestly against the weight of the evidence. Nor were they so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. Therefore, we find that the commission's orders were lawful and reasonable under R.C. 4903.13, and they are hereby affirmed.

*Orders affirmed.*

MOYER, C.J., DOUGLAS, P. BRYANT, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

PEGGY BRYANT, J., of the Tenth Appellate District, sitting for RESNICK, J.

_____