**WESTSIDE CELLULAR, INC., D.B.A. CELLNET, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.**

**[Cite as *Westside Cellular, Inc. v. Pub. Util. Comm*., 98 Ohio St.3d 165, 2002-Ohio-7119.]**

*Public utilities — Telephone companies — Complaint filed with Public Utilities Commission by cellular telephone service reseller alleging unlawful discriminatory practices by wholesale cellular service providers — Commission's order reversed when it is unlawful, unreasonable, and against the manifest weight of the evidence and shows mistake or misapprehension on the commission's part.*

(No. 2001-0960 — Submitted November 13, 2002 — Decided December 26, 2002.)

APPEAL from the Public Utilities Commission of Ohio, No. 93-1758-RC-CSS.

_____

**PFEIFER, J.**

Factual and Procedural Background

**{¶1}** Appellant, Westside Cellular, Inc., d.b.a. Cellnet, is a cellular telephone service reseller. As such, it purchases cellular service on a wholesale basis, rebrands the service, and markets it on a retail basis. On October 18, 1993, Cellnet filed a complaint with the Public Utilities Commission of Ohio against wholesale cellular service providers, including Cincinnati SMSA Limited Partnership, d.b.a. Ameritech Mobile ("Ameritech"). The final amended complaint consisted of ten counts asserting that Ameritech and another wholesale cellular service provider, New Par and related companies, had discriminated against Cellnet by unlawfully providing cellular service, equipment, and features to their own retail operations at rates, terms, and conditions more favorable than

those that they made available to Cellnet. In its January 18, 2001 opinion and order in case No. 93-1758-RC-CSS, the commission broadly agreed with Cellnet's assertions of unlawful discriminatory practices. The commission further held that Ameritech and the New Par companies, in violation of commission rules and regulations and Ohio statutes, had discriminated against Cellnet by providing retail cellular service to end users at rates and upon terms and conditions more favorable than those that they made available to Cellnet.

{¶2} The extent of the damages to Cellnet caused by Ameritech's violations will be established in the lawsuit for damages that has been brought in the Cuyahoga County Court of Common Pleas. A central issue in that calculation is the time period over which Ameritech discriminated against Cellnet. The commission found that with respect to Counts II (discrimination as to wholesale customers), V (discrimination in relation to retail customers), and IX (failure to make service available), the relevant time frame was 1995 to 1998. Cellnet asserted that the appropriate time frame was 1993 to 1998. The commission limited the time frame to 1995 to 1998 because it believed that the first substantive discussions between Ameritech and Cellnet regarding specific terms and conditions of service did not occur until sometime in 1995. Cellnet appeals that issue to this court. This is an appeal as of right.

Law and Analysis

{¶3} The dispute as to the relevant time period during which Cellnet could have suffered economic injury as a result of Ameritech's refusal to provide service or its provision of service only on a discriminatory basis is grounded in the commission's conclusion that no such injury could have occurred until Cellnet made a formal request for service or, at the least, made it known to Ameritech that Cellnet wished to act as a reseller and considered Ameritech to be denying nondiscriminatory service to Cellnet. No party to this appeal has challenged that aspect of the commission's conclusion. The only challenge has been to the

2

commission's determination of the beginning of the period during which Cellnet may have suffered economic injury.

{¶4} In the order the commission concluded that "Cellnet did not initially formally pursue the opportunity to serve" as a reseller of Ameritech's service and that Cellnet's efforts prior to the 1995 discussions with Ameritech consisted merely of "informal inquiry regarding the possibility of becoming a reseller." The commission's conclusion ignored one earlier effort by Cellnet in which it quite formally and unequivocally communicated not only to Ameritech, but also to the commission, its desire to become an Ameritech service reseller on a nondiscriminatory basis, and that Cellnet considered Ameritech to be denying Cellnet that service. That earlier effort was Cellnet's October 18, 1993 complaint that resulted seven years later in the commission's order that is the subject of this appeal.

{¶5} Later, the commission specifically addressed the issue of Cellnet's complaint as follows in its entry on rehearing:

{¶6} "The Commission rejects Cellnet's assertions that, through the filing of its complaint in 1993, its intentions were clearly stated. The filing of a complaint is no substitute for a formal request for service."

{¶7} The issue before us is whether the commission's position as to the Cellnet complaint was reasonable and lawful. As we acknowledged in *AK Steel Corp. v. Pub. Util. Comm.* (2002), 95 Ohio St.3d 81, 84, 765 N.E.2d 862:

{¶8} "As the court said recently in *Cincinnati Bell Tel. Co. v. Pub. Util. Comm.* (2001), 92 Ohio St.3d 177, 179-180, 749 N.E.2d 262, 264-265:

{¶9} " 'We have consistently refused to substitute our judgment for that of the commission on evidentiary matters. *Cincinnati Gas & Elec. Co. v. Pub. Util. Comm.* (1999), 86 Ohio St.3d 53, 711 N.E.2d 670; *Dayton Power & Light Co. v. Pub. Util. Comm.* (1983), 4 Ohio St.3d 91, 4 OBR 341, 447 N.E.2d 733; *Columbus v. Pub. Util. Comm.* (1959), 170 Ohio St. 105, 10 O.O.2d 4, 163

N.E.2d 167. Traditionally, we have deferred to the judgment of the commission in instances involving the commission's special expertise and its exercise of discretion, when the record supports either of two opposing positions. *AT&T Communications of Ohio, Inc. v. Pub. Util. Comm.* (1990), 51 Ohio St.3d 150, 555 N.E.2d 288; *Dayton Power & Light Co. v. Pub. Util. Comm.* (1962), 174 Ohio St. 160, 21 O.O.2d 427, 187 N.E.2d 150. We have held that we will reverse a commission order only where it is unreasonable, unlawful, or against the manifest weight of the evidence or shows misapprehension, mistake, or willful disregard of duty. *Cincinnati Gas & Elec. Co.*, 86 Ohio St.3d 53, 711 N.E.2d 670; *Ohio Edison Co. v. Pub. Util. Comm.* (1992), 63 Ohio St.3d 555, 589 N.E.2d 1292; see R.C. 4903.13.' "

{¶10} While an evidentiary matter, the adequacy of Cellnet's complaint to trigger Ameritech's liability exposure is a mixed question of fact and law appropriate for this court's consideration and determination. We hold that the commission's conclusion that, as a matter of fact and law, Cellnet's October 18, 1993 complaint did not constitute a sufficiently formal written notice to Ameritech of Cellnet's desire to be a retail seller of Ameritech's wholesale cellular service was unlawful, unreasonable, and against the manifest weight of the evidence and shows mistake or misapprehension on the commission's part. Therefore, we reverse the commission and hold that the applicable time frame commenced October 18, 1993, the date of Cellnet's complaint.

Order reversed.

MOYER, C.J., DOUGLAS, FARMER and F.E. SWEENEY, JJ., concur.

COOK, J., dissents.

LUNDBERG STRATTON, J., dissents.

SHEILA G. FARMER, J., of the Fifth Appellate District, sitting for RESNICK, J.

_____

**COOK, J., dissenting.**

{¶11} The majority concludes that the commission's determination was "unlawful, unreasonable, and against the manifest weight of the evidence and shows mistake or misapprehension on the commission's part." Given the ambiguous nature of the evidence offered by the parties concerning the issue of notice to Ameritech and the commission's competence in interpreting its own orders and regulations in assessing that evidence, this court should accord deference to the judgment of the Public Utilities Commission and its construction of its own rules. *AT&T Communications of Ohio, Inc. v. Pub. Util. Comm.* (1990), 51 Ohio St.3d 150, 154, 555 N.E.2d 288; *Dayton v. Pub. Util. Comm.* (1962), 174 Ohio St. 160, 162, 21 O.O.2d 427, 187 N.E.2d 150.

{¶12} I do not conclude that the commission abused its discretion here. Accordingly, I respectfully dissent.

_____

**LUNDBERG STRATTON, J**., **dissenting**.

{¶13} Because I believe that the Public Utilities Commission properly determined that the allegations made in Cellnet's complaint against Ameritech are limited to the period of time from 1995 to 1998, I respectfully dissent.

{¶14} An order issued by the commission will not be reversed on appeal unless it is "unreasonable, unlawful, or against the manifest weight of the evidence or shows misapprehension, mistake, or willful disregard of duty." *Cincinnati Bell Tel. Co. v. Pub. Util. Comm.* (2001), 92 Ohio St.3d 177, 180, 749 N.E.2d 262.

{¶15} The majority's holding is premised solely upon its determination that a complaint is sufficient to constitute a formal request to resell Ameritech's mobile service. In reaching this determination, the majority completely ignores Cellnet's initial communication with Ameritech regarding resale of Ameritech's service and the commission's analysis of that communication. Because I believe

that this information is important in determining the outcome of this case, I will address it below.

{¶16} In 1993, Cellnet's president spoke over the phone to an Ameritech executive regarding Cellnet becoming a reseller of Ameritech's mobile service. However, no such deal materialized. In 1993, Cellnet filed a complaint against Ameritech alleging that it discriminated against Cellnet by selling Cellnet's competitors service for less than it offered to sell such services to Cellnet.

{¶17} With regard to the 1993 phone call, the commission determined that "general telephone calls and conversations requesting a meeting to discuss the potential of becoming a reseller are no substitute for a formal request for service." The commission concluded that "Cellnet 'did not initially formally pursue the opportunity to serve in a reseller capacity but rather its efforts, at best, equated to the level of an informal inquiry regarding the possibility of becoming a reseller.' "

{¶18} Although the majority fails to address these communications, Cellnet complains that there is no legal requirement that a request for service must be formal. However, the commission did not espouse a specific *legal standard* for determining the sufficiency of a request for service; it merely made a *finding of fact* in this case that Cellnet's efforts to request service from Ameritech *were insufficient* to place the onus on Ameritech to provide Cellnet service.

{¶19} Cellnet argues that its 1993 inquiry about reselling Ameritech's mobile service was sufficient and thus the commission's order was against the manifest weight of the evidence. In support of this assertion, Cellnet offered evidence that during the 1993 phone conversation, an Ameritech executive provided resale rates to Cellnet's president and told him that "someone" would contact Cellnet about its request to become a reseller. No one from Ameritech ever contacted Cellnet, and Cellnet took no further action. Cellnet claims that its

actions and Ameritech's inaction were sufficient to prove that Cellnet had requested service from Ameritech.

{¶20} I believe that Cellnet's evidence does not conflict with the commission's factual finding that Cellnet's actions were insufficient to be characterized as a request for service. Clearly, the commission did not believe that merely asking for rates coupled with Ameritech's failure to call Cellnet back could be characterized as a request for service. Therefore, I would affirm the commission's finding that Cellnet did not formally request service from Ameritech because we do not substitute our judgment for that of the commission on evidentiary matters. *Cincinnati Bell*, 92 Ohio St.3d at 179, 749 N.E.2d 262.

{¶21} Cellnet argues that its 1993 complaint put Ameritech on notice that Cellnet wanted to resell Ameritech's mobile service. The majority, while ignoring all of the factual findings recited above, finds that the complaint constituted notice. I disagree.

{¶22} A complaint is simply an allegation of facts that must be proven. The commission found that the allegations were not proven, i.e., that Cellnet never adequately requested service. The majority ignores the commission and instead concludes that the complaint *became* the notice. By doing so the majority transforms a complaint from mere allegations that must be proven into the actual *vehicle of notice*. We have thus done away with any need to take the preliminary steps, i.e., make an adequate request for service, and instead have substituted a complaint as the only necessary demand for service. That has never been the purpose of a complaint in our system of American law. We encourage litigation only after we address all prerequisites to filing the complaint. Under the majority's decision there is nothing left to prove because the complaint becomes the substitute for prior action. If the General Assembly had intended under its regulatory scheme that a complaint be sufficient notice, it could have specified so.

**{¶23}** An analogy in the retail context makes the flaw in the majority's decision more obvious. A customer wants phone service. The customer calls the phone company and inquires about rates. No one gets back to the customer. The customer then sues for service, claiming that no one ever came out and installed service, even though the customer never called back, followed up, or actually ordered the service. The court then awards the customer damages on the basis that the *complaint* notified the phone company that the customer was really serious and wanted service. So instead of being able to answer the complaint and deny that the customer ever requested service, the phone company should have rushed out after the complaint was filed and installed service immediately. This simple analogy illustrates the problem with the majority's conclusion that a complaint equates to a request for service.

**{¶24}** We run a grave danger that this decision creates new law in that it removes the obligation to take action before the complaint is filed and transforms a complaint into a demand. This decision may have implications reaching far beyond this case.

**{¶25}** The commission made a factual finding: Cellnet never formally requested service. Cellnet failed to prove the allegation in its complaint that it did make a request for service. The majority does not refute even that factual finding. Instead, it transforms the complaint itself into proof of one of its allegations. The majority has not really even substituted its judgment; it just created new law to warrant its conclusion.

**{¶26}** Accordingly, because I believe that the commission's order was reasonable, lawful, and supported by the manifest weight of the evidence, I respectfully dissent.

_____

Hahn, Loeser & Parks, L.L.P., Robert J. Fogarty, Randy J. Hart and Mark D. Griffin; Tricarichi & Carnes and Carla M. Tricarichi, for appellant.

Betty D. Montgomery, Attorney General, Duane W. Luckey, Steven T. Nourse and Jodi J. Bair, Assistant Attorneys General, for appellee.

Porter, Wright, Morris & Arthur, L.L.P., Kathleen M. Trafford and Daniel W. Costello, for intervening appellees New Par et al.

Calfee, Halter & Griswold, L.L.P., Mark I. Wallach, Kevin M. Sullivan and James F. Lang, for intervening appellee Cincinnati SMSA Limited Partnership.

_____