[This opinion has been published in *Ohio Official Reports* at 70 Ohio St.3d 244.]

OFFICE OF CONSUMERS' COUNSEL, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *Consumers' Counsel v. Pub. Util. Comm.*, 1994-Ohio-469.]

*Public Utilities Commission—Application for rate increase by small telephone company—R.C. 4927.04(B) and the commission's alternative regulations permit the commission to set small company rates without a hearing— Ratepayers have right to protect interest they may have in just and reasonable rates under R.C. 4905.22 by filing a complaint under R.C. 4905.26.*

(No. 93-1710—Submitted May 25, 1994—Decided September 14, 1994.)

APPEAL from the Public Utilities Commission of Ohio, No. 92-2336-TP-AIR.

———————————

{¶ 1} On August 15, 1991, the appellee Public Utilities Commission of Ohio adopted alternative regulatory requirements for small local exchange telephone companies. *In the Matter of the Commission Investigation into the Implementation of Sections 4927.01 to 4927.05, Revised Code, as They Relate to Small Local Exchange Companies* (Aug. 15, 1991), PUCO No. 89-564-TP-COI ("89-564"). The commission adopted the alternative regulatory requirements pursuant to R.C. 4927.04(B), which provides:

"Upon the application of any telephone company having fewer than fifteen thousand access lines, the public utilities commission may, by order, exempt such company, with respect to any public telecommunications service it provides, from any provision of Chapter 4905. or 4909. of the Revised Code that is specified and requested in such application, except sections 4905.20, 4905.21, 4905.22, 4905.231, 4905.24, 4905.241, 4905.242, 4905.243, 4905.244, 4905.25, 4905.26, 4905.30, 4905.32, 4905.33, 4905.35, and 4905.381 of the Revised Code; or may

establish alternative regulatory requirements to apply to such company and service, provided the commission finds that the alternative requirements are in the public interest."

{¶ 2} The alternative regulatory requirements provide an exception to many of the procedures associated with traditional rate-base/rate-of-return regulation found in R.C. Chapters 4905 and 4909, and are generally intended to streamline the regulatory ratemaking process in the increasingly competitive telecommunications industry. In summary, the alternative regulatory requirements provide:

(1) The telephone company notifies commission staff and the OCC of its intent to file an application to increase its rates and of the ratemaking methodology it intends to employ.

(2) After commission analysis the company may file a formal rate-increase application, which need not conform to the staff's analysis. The company must also give notice of the filing of an application to affected municipal authorities and to customers.

(3) The commission must then issue an entry accepting the application, which triggers the release and docketing of the staff's initial analysis and makes its workpapers available to the public. The entry also sets dates for a public forum and a subsequent settlement conference. The purpose of the forum, to be held in the local exchange area, is to explain the proposed increase to the public and allow the public to testify as to concerns about the proposed increase and the adequacy of the service. The purpose of the settlement conference is to permit the company, commission staff, and intervening parties to reach a consensus on the methodology used, the amount of the increase, and the rate design.

(4) If no agreement is reached at the settlement conference, the matter is scheduled for hearing.

(5) If the company and any one intervenor, or the company and the commission's staff reach agreement as to all issues, the agreement shall be reduced

to writing and docketed with the commission. Non-signatory parties, or other interested persons who did not intervene, may file written objections to the agreement with the commission.

(6) If no objections are filed, the agreed-upon rates become effective automatically thirty days after the agreement is filed, unless the commission orders otherwise.

(7) If objections are filed, the commission issues an order approving the agreement and implementing the rates no sooner than the forty-sixth day after the agreement is filed or suspends the effective date of increase based on the objections filed or its own motion.

(8) If the effective date is suspended, the commission may subsequently issue an order accepting the agreement or it may reject the agreement and set the matter for hearing, at which the company will bear the burden of proving the proposed increase to be reasonable.

{¶ 3} Provisions of the Revised Code retained under the alternative regulatory requirements include R.C. 4905.22 (the right to necessary and adequate service and just and reasonable charges) and 4905.26 (the right to file a complaint [upon reasonable grounds] to contest, *inter alia*, the adequacy of service and the reasonableness of rates).

{¶ 4} Intervening appellee McClure Telephone Company filed an application to increase its rates under the alternative regulations and also requested, pursuant to R.C. 4927.04, that it be exempted from complying with R.C. Chapter 4909, as necessary, and specifically from Ohio Adm. Code Chapter 4901-7 and R.C. 4909.18(A) through (E). (The latter are the voluminous standard filing requirements under the traditional ratemaking procedure.) The commission granted the exemption and the case was processed under the alternative requirements. The commission's staff and the company reached an agreement resolving all issues in the matter; OCC filed objections; the commission's staff and the company filed

responses; and OCC filed replies. In reviewing the stipulation, the commission stated that it had "established this procedure of allowing objections and responses to enable the parties to advance their positions before the Commission. The Commission will consider the positions and arguments raised by the parties in their filings as to both fact and law." No evidentiary hearing was held.

{¶ 5} The commission rejected OCC's objections, relying on the written responses of its staff and the company, and ultimately approved the agreement, finding that it was supported by the record and was in the public interest. Specifically, the commission found that the alternative regulatory treatment for McClure permitted the commission to process the rate-increase application in four months, rather than the customary nine (or more) months, and that the process removed the traditional "rate case expense" from the rates being set.

{¶ 6} The commission denied OCC's application for rehearing. OCC appealed to this court as a matter of right.

_____

*Robert S. Tongren*, Consumers' Counsel, *David C. Bergmann* and *Andrea M. Kelsey*, Associate Consumers' Counsel, for appellant.

*Lee Fisher*, Attorney General, *James B. Gainer* and *Ann E. Henkener*, Assistant Attorneys General, for appellee.

*J. Raymond Prohaska*, for intervening appellee McClure Telephone Company.

_____

**Per Curiam.**

{¶ 7} We affirm the commission's order for the following reasons.

{¶ 8} In its first proposition of law, OCC argues that the commission was without authority to adopt the alternative regulatory requirements on its own initiative, citing the language of R.C. 4927.04(B), which provides that alternative regulations may be established "*[u]pon the application* of any telephone company

having fewer than fifteen thousand access lines." (Emphasis added.) In its second proposition of law, OCC argues that because the commission lacked authority to adopt alternative regulatory requirements on its own initiative, the requirements adopted in PUCO No. 89-564-TP-COI are actually procedural rules promulgated under R.C. 4927.04(D) which are invalid because they exceed statutory authority.

{¶ 9} These issues were not stated in OCC's application for rehearing. R.C. 4903.10 provides, in part, that an application for rehearing "shall be in writing and shall set forth specifically the ground or grounds on which the applicant considers said order to be unreasonable or unlawful. No party shall in any court urge or rely on any ground for reversal, vacation, or modification not so set forth in said application." We have held that setting forth specific grounds for rehearing is a jurisdictional prerequisite for our review. *Cincinnati Bell Tel. Co. v. Pub. Util. Comm.* (1984), 12 Ohio St.3d 280, 290, 12 OBR 356, 365, 466 N.E.2d 848, 857, appeal dismissed (1986), 476 U.S. 1166, 106 S.Ct. 2884, 90 L.Ed.2d 972; *Akron v. Pub. Util. Comm.* (1978), 55 Ohio St.2d 155, 161-162, 9 O.O.3d 122, 125-126, 378 N.E.2d 480, 485; *Cincinnati v. Pub. Util. Comm.* (1949), 151 Ohio St. 353, 39 O.O. 188, 86 N.E.2d 10, paragraph seventeen of the syllabus; and *Travis v. Pub. Util. Comm.* (1931), 123 Ohio St. 355, 9 Ohio Law Abs. 443, 175 N.E. 586, paragraph six of the syllabus.

{¶ 10} OCC does not contend that these propositions of law were specifically raised on rehearing. Rather, it argues that the commission does not have jurisdiction to consider such issues and, thus, that they may be raised for the first time on appeal. An administrative agency such as the commission may not pass upon the constitutionality of a statute. *Cleveland Gear Co. v. Limbach* (1988), 35 Ohio St.3d 229, 520 N.E.2d 188; *Atwood Resources, Inc. v. Pub. Util. Comm.* (1989), 43 Ohio St.3d 96, 100-101, 538 N.E.2d 1049, 1053. However, nothing precludes the commission from passing upon the proper application or construction

of a statute, which is the issue here. OCC's failure to contest the commission's construction of R.C. 4927.04(B) on rehearing is fatal.

{¶ 11} OCC also argues that these propositions of law are related to allegations of error raised on rehearing and that it has "substantially complied" with R.C. 4903.10. This argument ignores the strict specificity test recognized by this court in *Cincinnati*, *supra*:

"It may fairly be said that, by the language which it used, the General Assembly indicated clearly its intention to deny the right to raise a question on appeal where the appellant's application for rehearing used a shotgun instead of a rifle to hit that question." 151 Ohio St. at 378, 39 O.O. at 199, 86 N.E.2d at 23.

{¶ 12} In its third proposition of law, OCC argues that the retention of R.C. 4905.22 under the "exemption" language of R.C. 4927.04(B), and the retained applicability of that section under the commission's alternative regulations, give ratepayers a substantive right to "just and reasonable" rates and a right to fully participate in the ratemaking process to protect their interests. Although OCC states that such right would not necessarily require an evidentiary hearing, but only a fair fact-finding process, it effectively seeks an evidentiary hearing to resolve the factual issues presented by its objections below.

{¶ 13} Relying primarily on the *MCI* cases, *infra*, appellee argues that an evidentiary hearing is not required in this case and that the "objection and comment" procedure employed is a valid basis for resolving the factual issues raised by OCC and for approving the rates in the stipulation.

1. *Right to an evidentiary hearing.*

**{¶ 14}** We have repeatedly held that the right to participate in a ratemaking proceeding is statutory, not constitutional, and that absent express statutory provision, a ratepayer has no right to notice and hearing under the Due Process Clauses of the Ohio and United States Constitutions. *MCI Telecommunications Corp. v. Pub. Util. Comm.* (1988), 38 Ohio St.3d 266, 269, 527 N.E.2d 777, 780; *MCI Telecommunications Corp. v. Pub. Util. Comm.* (1987), 32 Ohio St.3d 306, 310, 513 N.E.2d 337, 342; *Armco, Inc. v. Pub. Util. Comm.* (1982), 69 Ohio St.2d 401, 409, 23 O.O. 3d 361, 366, 433 N.E.2d 923, 928; *Cleveland v. Pub. Util. Comm.* (1981), 67 Ohio St.2d 446, 453, 21 O.O. 3d 279, 283, 424 N.E.2d 561, 566; *Committee Against MRT v. Pub. Util. Comm.* (1977), 52 Ohio St.2d 231, 239, 6 O.O. 3d 475, 480, 371 N.E.2d 547, 552 (P. Brown, J., dissenting). *Cincinnati v. Pub. Util. Comm.* (1978), 55 Ohio St.2d 168, 9 O.O. 3d 130, 378 N.E.2d 729, certiorari denied (1979), 440 U.S. 912, 99 S.Ct. 1225, 59 L. Ed. 2d 461, which OCC cites as implicitly recognizing a ratepayer's right to due process in commission proceedings, involved a hearing required by statute; the court's reasoning in that case was consistent with *Ohio Bell Tel. Co. v. Pub. Util. Comm.* (1937), 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093, that in such circumstances the hearing afforded must be "fair and open."

**{¶ 15}** At common law, a utility had the same right as other businesses to set the rate for its services. Its customers had no substantive right to a fixed rate, and thus had no procedural rights in the ratemaking process. See *Sellers v. Iowa Power & Light Co.* (S.D. Iowa 1974), 372 F.Supp. 1169, 1172. With the advent of regulation, ratemaking became solely a legislative function and, absent express statutory provision, ratepayers had no right to participate in that process through the ballot box. See *Rivera v. Chapel* (C.A. 1, 1974), 493 F.2d 1302, 1304; *Georgia Power Co. v. Allied Chem. Corp.* (1975), 233 Ga. 558, 559, 212 S.E.2d 628, 630; *Pub. Util. Comm. of California v. United States* (C.A. 9, 1966), 356 F.2d 236, 241;

*Franchise Tax Bd. v. Superior Court* (1951), 36 Cal.2d 538, 549, 225 P.2d 905, 911.

{¶ 16} Under Ohio's traditional ratemaking process, the General Assembly provides for quasi-judicial ratemaking hearings in which ratepayers in general (R.C. 4909.18, 4909.19, 4903.221) and OCC in particular (R.C. 4911.02) may participate. However, by enacting R.C. 4927.04(B), the General Assembly delegated authority to the commission to exempt small telephone companies entirely from the traditional ratemaking procedure, in which case the process could be entirely legislative, and ratepayers would have no opportunity to participate, or to promulgate alternative regulations, which, at least in this case, presented some opportunity to participate, short of an evidentiary hearing.

{¶ 17} That the intent of R.C. 4927.04(B) is to dispense with the notice and hearing requirements in the ratemaking process for small telephone companies is evident from the legislative history of Am. Sub. H.B. No. 563. J.R. Prohaska testified on behalf of the Ohio Telephone Association that:

"The small companies, like others, would still have to render adequate service [a reference to R.C. 4905.22], still have to have reasonable rates [a reference to R.C. 4905.22], still be subject to complaint procedures [a reference to R.C. 4905.26], but would be spared the expense of needless paperwork, procedures and hearings.")

{¶ 18} Also, the Legislative Service Commission bill analysis stated:

"The bill does not expressly require notice or hearing or other procedural provisions in the case of such an application [under R.C. 4927.04(B)]."

{¶ 19} Therefore, we find OCC's construction of R.C. 4905.22 is inconsistent with the intent of R.C. 4927.04(B) and the commission's alternative regulations, which expressly do not require hearing under the circumstances involved in this case.

2. *The MCI cases and the "notice and comment" procedure.*

**{¶ 20}** Both OCC and the commission assume that the alternative regulatory requirements provide for quasi-judicial fact-finding and an order by the commission. On this basis, OCC argues that the record below contains no evidence, that the record is insufficient to support the commission's decision (see R.C. 4903.13), and that the case must be remanded for evidentiary hearing upon which a proper order may be based. The commission apparently assumes that the "objection and comment" procedure is a sufficient basis to make a factual determination as to the reasonableness of the rates set, and that that procedure provides a sufficient basis for this court's review under R.C. 4903.13 (under which the court must ascertain if the commission's order is supported by the manifest weight of the evidence). It relies on the *MCI* cases, *supra*, in which this court, at least in part, based its affirmance of the order upon a similar process.

**{¶ 21}** The *MCI* cases were appeals resulting from a commission-initiated investigation into the reconfiguration of the telecommunications industry after the divestiture of AT&T. The investigation specifically concerned the charges that telephone companies would have to pay for access to Ohio Bell's system in order to provide long distance calling, and the distribution of excess revenues collected under the plan. The commission held an initial hearing in the case, as required by R.C. 4905.26, and in its initial order found that ongoing issues would be addressed by a notice and comment procedure. MCI did not appeal the initial order contesting the procedure, but argued in the 1987 and 1988 appeals that an evidentiary hearing should have been held on the subsequent issues and that the commission's resulting orders were not supported by evidence of record. A majority of this court held that MCI was not constitutionally entitled to a hearing and that the initial hearing satisfied the statutory hearing requirement. The majority went on to affirm the commission based on the totality of the record before it, which included the evidence adduced at hearing as well as the subsequent comments received.

**{¶ 22}** The dissent in each case argued that the commission, as a creature of statute, had no authority to set rates through the quasi-legislative "notice and comment" procedure and that, because no hearing was held on the issues, there was no evidence upon which to base the commission's order.

**{¶ 23}** While *MCI* struggled with the statutory hearing requirement, there is no such dilemma here. R.C. 4927.04(B) and the commission's alternative regulatory requirements issued thereunder now permit essentially quasi-legislative ratemaking. Under such a method of ratemaking, as found in this case, there is no evidence to support the commission's determination, and no evidence by which we may perform our review under R.C. 4903.13. If we were to affirm the rates set in this case as reasonable, we would be doing so upon the basis of the untested assertions of the commission's staff and the telephone company's attorney.

**{¶ 24}** Therefore, we interpret R.C. 4927.04(B) and the commission's alternative regulations as permitting the commission to set small company rates without a hearing. Ratepayers have the right to protect the interest they may have in just and reasonable rates under R.C. 4905.22 by filing a complaint under R.C. 4905.26. This procedure is analogous to ratepayers' rights when the commission approves a new service and its rates under R.C. 4909.18. The process satisfies the intent of R.C. Chapter 4927 to streamline the regulatory process in order that companies can respond more quickly to competitive pressures (by earlier approval of rates), and it also benefits consumers by eliminating rate case expense.

**{¶ 25}** OCC contends further that assuming *arguendo* the commission's alternative regulations resulted in an adequate record being made, that its determination was not supported by that record, and that the resultant rates were unjust and unreasonable. Specifically, OCC argues that ratepayers are improperly bearing the cost of a $1,561 unregulated loss (which was considered in computing net income), that ratepayers are supporting an exorbitant salary for the company's

manager, and that ratepayers are subsidizing the manager's personal use of the company vehicle.

{¶ 26} As stated above, the commission's determinations as to these issues are based upon the untested comments and responses of its staff and the company. There is no evidence by which the court may consider the reasonableness of the commission's determinations, *i.e.*, whether the commission's determinations are supported by the manifest weight of the evidence. OCC's recourse is not through remand in this proceeding, but through a complaint case pursuant to R.C. 4905.26.

{¶ 27} The order of the commission is, accordingly, affirmed.

*Order affirmed.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

———————————