[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Ohio Power Co.*, Slip Opinion No. 2014-Ohio-4271.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-4271

IN RE APPLICATION OF OHIO POWER COMPANY TO UPDATE ITS TRANSMISSION COST RECOVERY RIDER RATES; INDUSTRIAL ENERGY USERS-OHIO, APPELLANT; OHIO POWER COMPANY ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Ohio Power Co.*, Slip Opinion No. 2014-Ohio-4271.]

*Public utilities—Transmission cost recovery rider—R.C. 4928.144(A)(2)— Transmission costs recovery rider—Public Utilities Commission order permitting utility to recoup underrecovered transmission costs from all customers over three years on nonbypassable basis not unlawful or unreasonable—Order did not constitute impermissible retroactive ratemaking—Collection on nonbypassable basis not unauthorized— Orders affirmed.*

(No. 2013-0154—Submitted July 9, 2014—Decided October 7, 2014.)

APPEAL from the Public Utilities Commission, No. 12-1046-EL-RDR.

_____

**KENNEDY, J.**

## SUMMARY

**{¶ 1}** In the case below, the commission authorized the Ohio Power Company to recover costs associated with providing transmission service to its standard-service-offer customers (those who take generation service from the incumbent distribution utility instead of buying it on the market). The cost of transmission service is set by the Federal Energy Regulatory Commission ("FERC"). Under Ohio law, electric-distribution utilities are allowed to recover from their retail customers all transmission-related costs imposed on the utility by FERC or by an organization approved by FERC. R.C. 4928.05(A)(2). Ohio Power recovers these costs through a reconciling rate mechanism called the Transmission Cost Recovery Rider ("TCRR"). Ohio Adm.Code 4901:1-36-03(A). The commission annually reviews and adjusts the TCRR to ensure that the utility is recovering only its actual costs of providing the service. Ohio Adm.Code 4901:1-36-03(B). By commission rule, shopping customers—those who shop for electric service from a competitive supplier—bypass the TCRR and thus avoid having to pay the rider. Ohio Adm.Code 4901:1-36-04(B).

**{¶ 2}** During the period under review in this case, Ohio Power reported that it had underrecovered $36 million in transmission costs. The commission's order determined that Ohio Power could collect the underrecovered costs from both shopping and nonshopping customers. The commission found that a large percentage of shopping customers who were receiving transmission service from Ohio Power at the time the underrecovery was created had since decided to take service from an alternative generation provider. Although these shopping customers would normally be able to avoid paying the TCRR, the commission reasoned that it would be unfair to require nonshopping customers to shoulder the entire burden of paying for the underrecovery, since the underrecovery was caused in part by these shopping customers.

{¶ 3} Industrial Energy Users-Ohio ("IEU") challenges the commission's decision to allow the company to recover the underrecovered transmission costs from shopping customers. For the reasons discussed in detail below, we affirm the commission.

## FACTS AND PROCEDURAL BACKGROUND

{¶ 4} Since competition began in the provision of electric-generation service, the law has required incumbent electric-distribution utilities to transfer control of their transmission assets to "one or more qualifying transmission entities." R.C. 4928.12(A). On October 1, 2004, Ohio Power transferred control of its transmission assets to PJM Interconnection, L.L.C., one of six regional power grids regulated by FERC.[1] PJM, a qualifying entity under R.C. 4928.12(B)(1), now coordinates and directs the operation of Ohio Power's transmission network.

{¶ 5} Ohio Power, as a member of PJM, is charged for securing transmission service through the organization. Currently, PJM bills Ohio Power based on rates set by FERC for transmission service associated with serving the company's customer load. In turn, Ohio law permits Ohio Power (and all other electric-distribution utilities) to recover from the utility's retail customers the FERC-approved transmission charges billed by PJM. R.C. 4928.05(A)(2) (allowing electric distribution utilities to recover "all transmission and transmission-related costs * * * imposed on or charged to the utility by * * * a regional transmission organization * * * approved by" FERC). This provision authorizes the commission to provide for recovery through a "reconcilable rider" added to the electric utility's distribution rates. *Id.*

---

[1] PJM is a multiutility transmission organization designated by FERC to coordinate the movement of wholesale electricity in all or part of 13 states—including Ohio—and the District of Columbia. *See generally Ohio Consumers' Counsel v. Pub. Util. Comm.*, 111 Ohio St.3d 384, 2006-Ohio-5853, 856 N.E.2d 940, ¶ 5-6.

**{¶ 6}** Consistent with this statutory provision, Ohio Power asked the commission to approve the TCRR to recover such costs as part of the company's first Electric Security Plan ("ESP"). The commission approved the TCRR as proposed by the company. *See In re Application of Columbus S. Power Co. for Approval of Elec. Sec. Plan*, Pub. Util. Comm. Nos. 08-917-EL-SSO and 08-918-EL-SSO, 49-50 (Mar. 18, 2009). The TCRR was then carried over as part of Ohio Power's second and current ESP, covering 2012 through 2014. *See* Pub. Util. Comm. Nos. 11-346-EL-SSO, 5, 63-64 (Aug. 8, 2012).

**{¶ 7}** The TCRR is structured as a pass-through mechanism, meaning that it is designed so that Ohio Power can recover the same amount in transmission costs from its customers as the amount billed by PJM. Once a year Ohio Power projects the amount of transmission costs it expects to be billed by PJM, and those costs are used as a revenue requirement to calculate the TCRR rate over the next 12-month period. Because the costs included in the TCRR are based on projections that will vary from actual costs, the TCRR contains a true-up mechanism to reconcile any over- or underrecovered charges from the preceding 12-month period.

**{¶ 8}** Pursuant to Ohio Adm.Code 4901:1-36-03(B), Ohio Power files an application each year with the commission to update the rates charged under the TCRR and to reconcile any over- or underrecoveries stemming from the prior period. R.C. 4928.05(A)(2) and Ohio Adm.Code 4901:1-36-03(B). This case began when Ohio Power filed an application with the commission to update the TCRR rates for the period from September 2012 through August 2013. The application reflected that Ohio Power's TCRR had failed to recover enough revenue to recoup the costs that Ohio Power incurred to provide transmission service during the period of July 2011 through June 2012.

**{¶ 9}** The amount of underrecovered transmission costs was approximately $36 million. According to Ohio Power, these underrecovered costs

4

were caused primarily by (1) the difference between the costs projected in the company's most recent TCRR update case and the actual costs incurred to provide transmission service over that period (i.e., transmission charges billed to Ohio Power by PJM from July 2011 through June 2012) and (2) a substantial increase (from less than 10 percent to nearly 40 percent) in the number of customers in Ohio Power's service territory shopping for generation service.

{¶ 10} Ohio Power would normally recoup any underrecovered amounts through the TCRR over the next 12-month period. But to mitigate the impact of the rate increase on customers, Ohio Power proposed to collect the underrecovery balance with carrying charges over a three-year period. By commission rule, the TCRR is imposed on Ohio Power's standard-service-offer customers since these customers are the ones who were provided the transmission service. Ohio Adm.Code 4901:1-36-04(B). Therefore, customers can avoid paying the TCRR by choosing to shop for generation service from a competitive supplier.[2] Ohio Power proposed that the rate impact could be further mitigated by collecting the underrecovered costs from all customers (shopping and nonshopping) pursuant to R.C. 4928.144.

{¶ 11} As an initial matter, the commission determined that it was not necessary to hold an evidentiary hearing in the case. *In re Application of Ohio Power Co. to Update the Co.'s Transmission Cost Recovery Rider*, Pub. Util. Comm. No. 12-1046-EL-RDR, 6 (Oct. 24, 2012) (the "*TCRR Order*"). The commission has discretion under Ohio Adm.Code 4901:1-36-05 to decide

---

[2] Customers who shop do not have to pay the TCRR to Ohio Power, Ohio Adm.Code 4901:1-36-04(B), but they do not entirely avoid paying transmission costs. Shopping customers pay for transmission service through their new contracts with competitive suppliers.

whether a hearing on the application is necessary.[3]    No party challenged the commission's decision not to conduct a hearing.[4]

{¶ 12} As to the merits, the commission's opinion and order approved Ohio Power's proposed TCRR rates for the next annual period.  The commission also agreed with Ohio Power that it was necessary to minimize the rate impact that would otherwise occur if Ohio Power were to collect $36 million in transmission costs in just one year.  The commission therefore ordered Ohio Power to collect the underrecovered transmission costs over a three-year period, with carrying costs.  The commission also found that it was unfair to require nonshopping customers to shoulder the entire burden of paying for the underrecovery since the underrecovery was caused in part by customers who were now shopping but who had received transmission service from Ohio Power at the time the underrecovery was created.  To that end, the commission ordered that Ohio Power should collect the underrecovered balance from *all* customers (shopping and nonshopping) and authorized Ohio Power to establish a separate, nonbypassable charge until those costs were fully collected.  *TCRR Order* at 7.

{¶ 13} IEU timely applied for rehearing, which was denied.  *In re Application of Ohio Power Co. to Update its Transmission Cost Recovery Rider Rates,* Pub. Util. Comm. No. 12-1046-EL-RDR (Dec. 12, 2012) ("*TCRR*

---

[3] The rule provides that "[u]nless otherwise ordered, * * * the commission shall approve the application or set the matter for hearing within seventy-five days after the filing of a complete application" to recover transmission costs.  The commission did not rule on the application within 75 days because the attorney examiner suspended the deadline in order to give the commission's staff additional time to review Ohio Power's application. *TCRR Order* at 2.

[4] IEU states in its reply brief that there is no evidence in the record as to what caused the underrecovery balance because the commission did not conduct an evidentiary hearing in this matter. IEU has forfeited any arguments that the commission's order lacked record support. We have jurisdiction only over arguments raised on rehearing before the commission, and IEU never challenged the commission's refusal to conduct an evidentiary hearing in an application for rehearing.  *See* R.C. 4903.10; *Office of Consumers' Counsel v. Pub. Util. Comm.*, 70 Ohio St.3d 244, 247, 638 N.E.2d 550 (1994).

*Rehearing Entry")*. IEU then filed the instant appeal challenging the commission's orders.

**STANDARD OF REVIEW**

**{¶ 14}** "R.C. 4903.13 provides that a PUCO order shall be reversed, vacated, or modified by this court only when, upon consideration of the record, the court finds the order to be unlawful or unreasonable." *Constellation NewEnergy, Inc. v. Pub. Util. Comm.*, 104 Ohio St.3d 530, 2004-Ohio-6767, 820 N.E.2d 885, ¶ 50. We will not reverse or modify a PUCO decision as to questions of fact where the record contains sufficient probative evidence to show that the commission's decision was not manifestly against the weight of the evidence and was not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. *Monongahela Power Co. v. Pub. Util. Comm.*, 104 Ohio St.3d 571, 2004-Ohio-6896, 820 N.E.2d 921, ¶ 29. The appellant bears the burden of demonstrating that the commission's decision is against the manifest weight of the evidence or is clearly unsupported by the record. *Id.*

**{¶ 15}** Although we have "complete and independent power of review as to all questions of law" in appeals from the PUCO, *Ohio Edison Co. v. Pub. Util. Comm.*, 78 Ohio St.3d 466, 469, 678 N.E.2d 922 (1997), we may rely on the expertise of a state agency in interpreting a law when "highly specialized issues" are involved and when "agency expertise would, therefore, be of assistance in discerning the presumed intent of our General Assembly." *Consumers' Counsel v. Pub. Util. Comm.*, 58 Ohio St.2d 108, 110, 388 N.E.2d 1370 (1979).

**DISCUSSION**

**{¶ 16}** IEU challenges the order on three grounds: (1) the commission engaged in unlawful retroactive ratemaking, (2) the commission erred in relying on R.C. 4928.144 to authorize the recovery of costs on a nonbypassable basis, and (3) the commission failed to follow precedent. After review, we find that none of

these grounds has merit. We address IEU's propositions of law out of order for ease of discussion.

## I. IEU's Proposition of Law No. 2: The commission cannot rely on its phase-in authority under R.C. 4928.144 to authorize Ohio Power to collect the underrecovery balance on a nonbypassable basis

{¶ 17} In its second proposition of law, IEU argues that the commission erred when it relied on its statutory phase-in authority to allow the collection of Ohio Power's underrecovered transmission costs on a nonbypassable basis. The statute at issue here is R.C. 4928.144, which provides:

> The public utilities commission by order may authorize any just and reasonable phase-in of any electric distribution utility rate or price established under sections 4928.141 to 4928.143 of the Revised Code * * * as the commission considers necessary to ensure rate or price stability for consumers. If the commission's order includes such a phase-in, the order also shall provide for the creation of regulatory assets pursuant to generally accepted accounting principles, by authorizing the deferral of incurred costs equal to the amount not collected, plus carrying charges on that amount. Further, the order shall authorize the collection of those deferrals through a nonbypassable surcharge on any such rate or price so established for the electric distribution utility by the commission.

{¶ 18} IEU raises three arguments under the second proposition: (1) the commission could not utilize R.C. 4928.144 in the underlying TCRR proceedings because any phase-in under the statute must be authorized in a standard-service-offer proceeding, (2) even if R.C. 4928.144 could be utilized in the TCRR

8

proceedings, the commission did not rely on the statute to authorize the recovery of the TCRR, and (3) the commission could not authorize recovery of the TCRR on a nonbypassable basis because the TCRR was not a rate or price established under R.C. 4928.143. We address each argument in turn.

**A. The plain language of R.C. 4928.144 does not support IEU's argument that the statute applies only to standard-service-offer proceedings**

{¶ 19} IEU first argues that the commission's phase-in authority under R.C. 4928.144 could not be invoked in the underlying TCRR proceedings. In IEU's view, the commission can invoke its phase-in authority only in the same proceeding that establishes the utility's standard service offer, the rate charged to customers who take generation service from the utility instead of a competitive supplier. *See* R.C. 4928.141(A) (requiring electric distribution utilities to provide a standard service offer). Because Ohio Power has chosen to provide its standard service offer in the form of an electric-security plan, IEU asserts that the commission could phase in rates only in the orders approving the company's electric-security plans. *See* R.C. 4928.143(A) ("For the purpose of complying with section 4928.141 of the Revised Code, the electric distribution utility may file an application for public utilities commission approval of an electric security plan * * *").

{¶ 20} We begin our analysis of this issue with the language of the statute. *See e.g., State v. Hanning*, 89 Ohio St.3d 86, 91, 728 N.E.2d 1059 (2000).

{¶ 21} R.C. 4928.144 provides that "[t]he public utilities commission by order may authorize any just and reasonable phase-in of any electric distribution utility *rate or price established under sections 4928.141 to 4928.143 of the Revised Code * * *.*" (Emphasis added.) IEU interprets the italicized language as limiting the exercise of the commission's authority to the proceedings that established the rate or price. IEU contends that because the commission did not invoke its phase-in authority during Ohio Power's ESP proceedings, when rates

and prices were established under R.C. 4928.143, it could not phase in those rates or prices in any subsequent proceeding.

{¶ 22} R.C. 4928.144 does limit the commission's authority. The commission may phase in only those rates and prices that are established under R.C. 4928.141 to 4928.143. It also requires that the phase-in be "just and reasonable." The statute, however, says nothing about when the commission may invoke its phase-in authority. The error in IEU's argument is that it interprets the statute as though it included the italicized words:

{¶ 23} The public utilities commission by order *under sections 4928.141 to 4928.143 of the Revised Code* may authorize any just and reasonable phase-in of any electric distribution utility rate or price.

{¶ 24} But R.C. 4928.144 simply does not read that way. In construing a statute, a court may not add or delete words. *State ex rel. Cincinnati Bell Tel. Co. v. Pub. Util. Comm.*, 105 Ohio St.3d 177, 2005-Ohio-1150, 824 N.E.2d 68, ¶ 32.

{¶ 25} The statute imposes few other restrictions on the commission's authority over the design of the phase-in. R.C. 4928.144 allows the commission to "authorize any just and reasonable phase-in" of electric-security-plan rates "*as the commission considers necessary* to ensure rate or price stability for consumers." While the end result must be "just and reasonable," the emphasized language grants the commission considerable discretion to determine if and when to phase in rates. *See In re Application of Columbus S. Power Co.*, 129 Ohio St.3d 568, 2011-Ohio-4129, 954 N.E.2d 1183, ¶ 10. *See also Payphone Assn. of Ohio v. Pub. Util. Comm.*, 109 Ohio St.3d 453, 2006-Ohio-2988, 849 N.E.2d 4, ¶ 25 ("When a statute does not prescribe a particular formula, the PUCO is vested with broad discretion").

{¶ 26} IEU, then, is challenging a judgment call, but it has not come close to showing an abuse of discretion. Notably, IEU focuses solely on the phrase "rate or price established under sections 4928.141 to 4928.143 of the Revised

Code," yet never discusses it in context. Context matters, and at no point does IEU identify any language in the statute that imposes timing limitations.

{¶ 27} In the end, IEU's interpretation fails on the plain language of the statute. The statutory language not only supports the commission's reading, but no other part of the statute expressly contradicts it. The commission's interpretation of R.C. 4928.144—that it allows the commission to invoke its phase-in authority outside of standard-service-offer proceedings—is reasonable. And given that this statute implicates a matter of rate design, we defer to the commission's reasonable interpretation. *See Consumers' Counsel v. Pub. Util. Comm.*, 10 Ohio St.3d 49, 50, 461 N.E.2d 303 (1984) (the setting of a "phase-in period" in which to recover certain expenses "is clearly within the discretionary purview of the commission"); *Consumers' Counsel v. Pub. Util. Comm.*, 125 Ohio St.3d 57, 2010-Ohio-134, 926 N.E.2d 261, ¶ 20 (commission possesses "broad discretion" to design rates); *Citywide Coalition for Util. Reform v. Pub. Util. Comm.*, 67 Ohio St.3d 531, 534, 620 N.E.2d 832 (1993) ("We have afforded the commission considerable discretion in matters of rate design * * *").

### B. The commission properly invoked R.C. 4928.144

{¶ 28} IEU next argues that the commission failed to state that it relied on R.C. 4928.144 to authorize Ohio Power to recoup the underrecovered TCRR balance on a nonbypassable basis. And, according to IEU, the commission repeated this error on rehearing when instead of stating that it had invoked its phase-in authority under R.C. 4928.144, it merely "stated that the TCRR Order was 'consistent with the Commission's authority under Section 4928.144, Revised Code.' " This argument lacks merit for two reasons.

{¶ 29} First, the commission by clear implication did rely on R.C. 4928.144. In the initial order, the commission approved Ohio Power's application to update its TCRR, which included the proposal to phase in rates on a nonbypassable basis pursuant to R.C. 4928.144. In doing so, the commission

rejected IEU's argument that R.C. 4928.144 was inapplicable and therefore could not serve as a basis for making the TCRR nonbypassable. *TCRR Order* at 7. The commission also specifically noted that the TCRR had been approved in each of Ohio Power's ESP proceedings, in reference to the requirement under R.C. 4928.144 that the phased-in "rate or price [be] established under sections 4928.141 to 4928.143 of the Revised Code." *TCRR Order* at 7.

{¶ 30} Moreover, even leaving aside the commission's initial order, the commission expressly stated on rehearing that a phase-in of the recovery of the underrecovered TCRR balance is appropriate under R.C. 4928.144, that it was proper to apply R.C. 4928.144 under the circumstances of this case, and that the conditions in R.C. 4928.144 for phasing in rates had been met. *See TCRR Rehearing Entry* at 4, 8-9.

{¶ 31} Second, IEU overlooks a basic point of procedure that is necessary to reverse a commission order: this court "will not reverse an order of the commission absent a showing of prejudice by the party seeking reversal." *Myers v. Pub. Util. Comm.*, 64 Ohio St.3d 299, 302, 595 N.E.2d 873 (1992). *See also Parma v. Pub. Util. Comm.*, 86 Ohio St.3d 144, 149, 712 N.E.2d 724 (1999); and *Ohio Commt. of Cent. Station Elec. Protection Assn. v. Pub. Util. Comm.*, 50 Ohio St.2d 169, 174, 364 N.E.2d 3 (1977). Moreover, IEU does not even attempt to show how it or its constituents suffered harm from the commission's failure to expressly rely on R.C. 4928.144 in the orders below.

{¶ 32} In sum, IEU failed to show reversible error. We therefore reject this argument.

## C. IEU's argument regarding R.C. 4928.143 lacks a coherent legal theory

{¶ 33} Finally, IEU argues that the commission cannot authorize recovery of the TCRR on a nonbypassable basis because the TCRR was not a "rate or price established under sections 4928.141 to 4928.143 of the Revised Code," as required by R.C. 4928.144. The commission found that the TCRR was approved

as part of Ohio Power's first and second electric-security plans, consistent with R.C. 4928.143. IEU challenges that determination, contending that the commission did not rely on R.C. 4928.143 when it authorized the TCRR. Rather, IEU claims that the commission authorized the TCRR under R.C. 4928.05. IEU has again failed to demonstrate reversible error.

{¶ 34} R.C. 4928.143 governs electric-security plans ("ESPs") and the types of rate components that may be included in such plans. R.C. 4928.143(B)(2)(g) provides that an ESP may include "[p]rovisions relating to transmission * * * service required for the standard service offer, including provisions for the recovery of any cost of such service that the electric distribution utility incurs * * * pursuant to the standard service offer." In 2009, the commission approved a TCRR mechanism as a part of the company's ESP. *See* Pub. Util. Comm. No. 08-918-EL-SSO, 49-50 (Mar. 18, 2009). In Ohio Power's second ESP case, covering the time period from 2012 through 2014, the commission approved the current version of the TCRR. *See* Pub. Util. Comm. No. 11-348-EL-SSO, 63-64 (Aug. 8, 2012).

{¶ 35} IEU does not dispute that R.C. 4928.143 allows Ohio Power to include a TCRR mechanism in the company's ESP. Nor does it claim that the commission failed to approve the TCRR in the company's ESP proceedings. Its only complaint is that the commission did not expressly rely on R.C. 4928.143 when it approved the TCRR in the ESP orders. It is true that the commission did not mention R.C. 4928.143 in approving the TCRR in either ESP case. Even so, IEU does not explain why it was necessary to do so in light of the commission's clear authority under R.C. 4928.143 to approve a TCRR mechanism as part of an ESP. IEU's failure to offer a coherent legal theory is grounds for rejecting its argument. *See, e.g.*, *In re Complaint of Wilkes v. Ohio Edison Co.*, 131 Ohio St.3d 252, 2012-Ohio-609, 963 N.E.2d 1285, ¶ 10; *Util. Serv. Partners, Inc. v. Pub. Util. Comm.*, 124 Ohio St.3d 284, 2009-Ohio-6764, 921 N.E.2d 1038, ¶ 53.

**II. IEU's Proposition of Law No. 3: Without a lawful and reasonable justification for its change of direction, the commission departed from commission precedent requiring that the TCRR remain fully bypassable**

{¶ 36} In its third proposition of law, IEU argues that the commission declined to follow precedent, namely, *In re Application of Duke Energy Ohio, Inc. for Approval of a Market Rate Offer*, Pub. Util. Comm. No. 10-2586-EL-SSO (Feb. 23, 2011). IEU maintains that the commission established the following precedent in *Duke*: reconcilable riders (such as the TCRR) that are originally avoidable by shopping customers must remain so and can never be collected from shopping customers. We disagree.

{¶ 37} The rider at issue in *Duke*—Rider SCR—was designed to be avoidable for customers taking generation service from a competitive supplier. Duke had proposed to make the rider unavoidable to such customers if amounts underrecovered through the rider reached a certain threshold. The commission rejected Duke's proposal with the following statement:

> In considering Duke's request to include a "circuit breaker" provision in Rider SCR, the Commission does not believe that such a provision would advance the policy of the state as articulated in Section 4928.02, Revised Code. Specifically, [R.C. 4928.02(H)] provides that it is the policy of the state to avoid anticompetitive subsidies flowing from a noncompetitive retail electric service to a competitive retail electric service and vice versa. If Duke were permitted to recover the costs included in Rider SCR from shopping customers, under any circumstances, we believe that it would create an anticompetitive subsidy. * * * Accordingly, the Commission does not believe that Rider SCR could be approved as a potentially unavoidable charge.

Pub. Util. Comm. No. 10-2586-EL-SSO, at 63-64.

{¶ 38} According to IEU, the commission held in *Duke* that a true-up of a bypassable rider cannot be collected on a nonbypassable basis " 'under any circumstances.' " But IEU's selective reading of the quoted passage from the *Duke* order gives a misleading impression of what the case stands for. As can be gleaned from reading the entire excerpt in context, the commission did not hold that a reconcilable rider that was originally made bypassable can never be collected from shopping customers under any circumstances. Rather, the commission merely held that Duke could not collect Rider SCR (which was proposed as a bypassable rider) from shopping customers under any circumstances, because to do so would create an anticompetitive subsidy. In short, the commission did not depart from precedent in the case below because *Duke* never established the precedent that IEU alleges. We therefore reject proposition of law No. 3.

### III. Proposition of Law No. 1: The commission engaged in retroactive ratemaking when it authorized the collection of the TCRR under-recovery balance on a nonbypassable basis

{¶ 39} IEU argues in proposition of law No. 1 that the commission engaged in unlawful retroactive ratemaking when it allowed Ohio Power to collect under-recovered transmission costs from shopping customers. IEU asserts that the commission's *TCRR Order* is unlawful because it makes shopping customers—who avoided paying the TCRR before the order—retroactively responsible for paying transmission costs that Ohio Power had incurred to serve nonshopping customers. For the reasons that follow, we find that the commission did not engage in unlawful retroactive ratemaking.

**A. R.C. 4928.144 authorized the commission to defer the collection of the TCRR, and the statute mandates that deferrals be collected through a nonbypassable surcharge**

{¶ 40} IEU concedes that Ohio Power is entitled to recover the $36 million in underrecovered transmission costs. IEU, however, maintains that the commission engaged in unlawful retroactive ratemaking when it allowed Ohio Power to collect these underrecovered costs from shopping customers. IEU states that before the *TCRR Order*, shopping customers were not responsible to Ohio Power for any transmission costs, and only nonshopping customers were required to pay the TCRR. According to IEU, the rule against retroactive ratemaking prohibits the commission from authorizing Ohio Power to collect the underrecovered transmission costs through a nonbypassable charge, because use of this mechanism imposes revenue responsibility on shopping customers for unrecovered costs incurred to serve nonshopping customers.

{¶ 41} It is true that before the *TCRR Order*, shopping customers were not required to pay the TCRR. But the commission's decision to allow Ohio Power to collect the underrecovered transmission costs from shopping customers was not unlawful retroactive ratemaking. R.C. 4928.144 authorizes the commission to phase in rates or prices established in an electric-security plan, and it plainly gives the commission discretion over the design of the phase-in. Specifically, R.C. 4928.144 allows the commission to "authorize any just and reasonable phase-in of any electric distribution utility rate * * * *as the commission considers necessary to ensure rate or price stability for consumers*." (Emphasis added.) Ohio Power would normally recoup any underrecovered amounts through the TCRR over the next 12-month period (here, from September 2012 through August 2013). In order to mitigate the impact of the rate increase on customers, the commission authorized Ohio Power to collect the shortfall over three years instead of one year. Once the commission determined that it was necessary to phase in the recovery of

16

the shortfall over three years, R.C. 4928.144 required that the commission order the collection of deferred rates "through a nonbypassable surcharge on any such rate." In short, even if the commission's *TCRR Order* did amount to retroactive ratemaking, it was not unlawful because the commission had statutory authority to phase in the collection of rates through a nonbypassable surcharge.

{¶ 42} For its part, IEU has not shown an abuse of discretion. IEU's only arguments against the commission's use of its phase-in authority under R.C. 4928.144 are found in the second proposition of law, which we have already rejected, and there is no need to discuss those issues again. The commission is a creature of statute and can exercise only the authority conferred upon it by the General Assembly. *Tongren v. Pub. Util. Comm.*, 85 Ohio St.3d 87, 88, 706 N.E.2d 1255 (1999). In the end, IEU has not shown that the commission's exercise of its statutory phase-in authority was unlawful or unreasonable.

## B. IEU's remaining arguments under its first proposition of law do not compel reversal

{¶ 43} IEU raises two other arguments under proposition of law No. 1. One has been forfeited; the other lacks merit.

### 1. IEU's claim regarding the *2011 TCRR Order* was not presented to the commission on rehearing

{¶ 44} IEU argues that the commission violated the prohibition against retroactive ratemaking because the commission's order in Ohio Power's 2011 TCRR case failed to include any mechanism to shift revenue responsibility to shopping customers. *See In re Application of Ohio Power Co. to Update the Co.'s Transmission Cost Recovery Rider*, Pub. Util. Comm. No. 11-2473-EL-RDR (June 22, 2011) (the "*2011 TCRR Order*"). The *2011 TCRR Order* implemented the rates that led to the $36 million underrecovery at issue in this case. According to IEU, the commission was required to approve the

nonbypassable charge in the *2011 TCRR Order* in order to avoid the proscription against retroactive ratemaking.

{¶ 45} IEU has forfeited this argument by failing to present it to the commission in an application for rehearing. That jurisdictionally bars us from considering the claim. R.C. 4903.10; *Office of Consumers' Counsel v. Pub. Util. Comm.*, 70 Ohio St.3d 244, 247, 638 N.E.2d 550 (1994) ("setting forth specific grounds for rehearing is a jurisdictional prerequisite for our review").

## 2. Lost revenue due to regulatory delay is not at issue

{¶ 46} IEU also argues that the commission was wrong in finding that the under-recovery balance did not result from revenue lost due to regulatory delay. IEU asserts that the underrecovered transmission costs were the function of the delay inherent in the TCRR review process. According to IEU, the underrecovery balance resulted from revenue that Ohio Power was unable to collect from nonshopping customers during the prior annual review period. Therefore, IEU asserts that the commission violated the rule against retroactive ratemaking when it adjusted rates in the *TCRR Order* to allow Ohio Power to retroactively recover a portion of those costs from shopping customers.

{¶ 47} Contrary to IEU's contention, the *TCRR Order* does not compensate Ohio Power for revenues lost during the pendency of the commission's proceedings. *See In re Application of Columbus S. Power Co.*, 128 Ohio St.3d 512, 2011-Ohio-1788, 947 N.E.2d 655, ¶ 11 (making up for revenues lost due to regulatory delay is precisely the sort of rate increase that the court ruled out in *Keco Industries, Inc. v. Cincinnati & Suburban Bell Tel. Co.,* 166 Ohio St. 254, 141 N.E.2d 465 (1957)). To begin with, R.C. 4928.05 uses a retrospective approach to cost recovery and thus differs from a traditional ratemaking statute that sets rates prospectively. Specifically, R.C. 4928.05(A)(2) guarantees that the utility will recover transmission costs imposed by FERC or by a FERC-approved organization, and it does so through the use of a reconcilable

rider (the commission may "provide for the recovery, through a reconcilable rider on * * * distribution rates, of all transmission and transmission-related costs" imposed by FERC and others). The *TCRR Order* had no impact on Ohio Power's ability to recoup the entire $36 million underrecovery. Rather, the commission's only concern was whether Ohio Power would recover those costs from nonshopping customers only or from both shoppers and nonshoppers. In short, this is not a case where the commission altered present rates to make up for dollars lost " 'during the pendency of commission proceedings.' " *In re Application of Columbus S. Power Co.*, at ¶ 11, quoting *Lucas Cty. Commrs. v. Pub. Util. Comm.,* 80 Ohio St.3d 344, 348, 686 N.E.2d 501 (1997). Revenue lost due to regulatory delay is simply not at issue here.

## CONCLUSION

{¶ 48} IEU has the burden of demonstrating that the commission's orders were unjust, unreasonable, or unlawful. R.C. 4903.13; *AT & T Communications of Ohio, Inc. v. Pub. Util. Comm.*, 51 Ohio St.3d 150, 154, 555 N.E.2d 288 (1990). IEU has not carried that burden in this appeal. Therefore, we affirm the commission's orders.

Orders affirmed.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, FRENCH, and O'NEILL, JJ., concur.

_____

McNees, Wallace & Nurick, L.L.C., Samuel C. Randazzo, Frank P. Darr, and Matthew R. Pritchard, for appellant.

Steven T. Nourse, Matthew J. Satterwhite, and Yazen Alami, for appellee Ohio Power Company.

Michael DeWine, Attorney General, and William L. Wright and Thomas W. McNamee, Assistant Attorneys General, for appellee Public Utilities Commission of Ohio.

_____